124   427<br>p209  186

# PHILAD., W. & B. R. CO. v. J. A. McCORMICK.

ERROR TO THE COURT OF COMMON PLEAS OF CHESTER COUNTY.

Argued February 14, 1889—Decided February 25, 1889.

*(a)* There was evidence that the conductor of a passenger train, on a dark night, announced the approach of a station where passengers were to change cars and afterward stopped the train upon a bridge, without giving notice that the station was not reached; that a passenger then arose from his seat in a crowded and unlighted car, descended from the steps, fell over the bridge and was drowned.

1. Under such circumstances, the passenger had the right to suppose that the train had reached the station; proper attention to the safety of the passengers would have required some notice or warning to them to retain their seats; and it was not error to submit the question of the negligence of the defendant company to the jury.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 180 July Term 1888, Sup. Ct.; court below, No. 35 January Term 1888, C. P.

On November 18, 1887, John A. McCormick and Elizabeth McCormick, his wife, brought trespass against the Philadelphia, Wilmington & Baltimore Railroad Company, to recover damages incurred by reason of the death of their son, William McCormick, through the alleged negligence of the defendant company.   Issue.

At the trial on May 21, 1888, the facts developed in the plaintiffs' case were in substance as follows:

On September 17, 1887, William McCormick, unmarried and about 22 years of age, took passage at night on the railroad of defendant company for West Chester.   There were a number of cars on the train, some of them bound for West Chester, others for the Baltimore Central Railroad running in the direction of Oxford.   The night was very dark and the cars crowded.   Between Lenni station, a coaling place, and Wawa station, was a bridge over Chester creek 123 feet long, and passing perhaps 24 feet above the water.   The Baltimore Central leaves the Philadelphia & West Chester at Wawa station, curving around to the left, while the road to West Chester runs on a straight line to the right of the station.   When the train reached a point near Lenni station, it was divided. The engine took off the cars for West Chester, which were in front of the train, pulled across the bridge to Wawa station, and then returned for the cars which were to proceed up the Baltimore Central road.   William McCormick, though bound for West Chester was in one of these cars, the front one, which was unlighted.   The engine was coupled to them and started slowly towards the station.   When the cars had passed over a short distance the conductor announced, " Passengers for West Chester, change cars," or words to that effect.   In a few minutes the train stopped, when young McCormick got up and went to the platform, followed by other passengers, and as he alighted from the steps on the left side of the car, carrying an umbrella and a valise, he went over the bridge and was drowned.   Five witnesses called for the plaintiff testified that the announcement by the conductor was to the effect above given, the language repeated by each witness being a little different.

Charge of Court below.

On the part of the defendant company, the conductor testified that somebody asked him the question, whether they changed cars for West Chester, and he said, "Yes, sir, you change at Wawa for West Chester; these cars go up the Baltimore Central." He was corroborated by two other witnesses. The conductor and train men testified also that the cars were not stopped upon the bridge. It was shown that the distance to the bridge from the point where the engine was attached to the cars was 229 feet, 50 feet of which was traversed before the announcement of the conductor was made.

The court, FUTHEY, P. J., submitted all the disputed questions of fact to the jury, under instructions as to the liability of the defendant company for the negligence of its servants, and answered the points presented as follows:

I have been requested to charge you upon certain points, and I will do so, although I think probably I have already answered them in the general charge.

The plaintiffs request me to say:

1. It is the duty of the company to provide for the safe receiving and discharging of passengers. It is bound to exercise the strictest vigilance, not only in carrying them to their destination, but also in setting them down safely, if human care and foresight can do so; and if the jury find from the evidence that the defendant failed to exercise such vigilance, and that the decedent's death was the immediate result of such failure, then the verdict must be for the plaintiffs.

Answer: This is affirmed, subject to what I have said as to negligence upon the part of the defendant. I have also said that if there was negligence upon the part of the deceased the plaintiffs are not entitled to recover. Subject to that the point is affirmed.[1]

2. The decedent was called upon to exercise mere ordinary care, under all the circumstances, and the presumption is that he did so; the burden being upon the defendant to establish the contrary.

Answer: That point is affirmed.[2]

3. If the jury find for the plaintiffs, it will render a verdict for such an amount as will, in its opinion, represent the pecuniary loss suffered by them in the death of the decedent,

Charge of Court below.

taking into consideration what the deceased would probably have earned and contributed to plaintiffs, as indicated by his habits, conduct and earning ability.

Answer: This is affirmed, with the observations I have already made upon that subject.[3]

The defendant requests me to say:

1. The evidence in this case shows that McCormick attempted to leave the cars of the defendant while they were in motion: he was therefore guilty of contributory negligence, and there can be no recovery by the plaintiffs in this action.

Answer: I have already said to you that if the deceased attempted to leave the cars of the defendant while they were in motion, then he would be guilty of contributory negligence, and if he is guilty of negligence there can be no recovery. Whether he was thus guilty is a question for the jury.[4]

2. That William McCormick had no right to alight from the cars when approaching Wawa and away from a regular station constructed for that purpose, and the plaintiffs cannot recover.

Answer: It is true that he had no right to alight from the cars away from a regular station, unless he thus alighted in pursuance of the directions of the conductor, and had a reason to believe from the direction of the conductor, that he was at the station.[5]

3. That when William McCormick, the deceased, left the cars of the defendant away from the regular station at Wawa, and other than where a regular station had been constructed for that purpose, he ceased to be a passenger and the liability of the defendant as a common carrier ended, and having been killed after this, the present action cannot be sustained, and the verdict must be for the defendant.

Answer: The same observation which I have made with reference to the last point applies to this. William McCormick did leave the cars at a point before Wawa was reached; there is no dispute about that; he left the car on the bridge and the station is farther along the road beyond the bridge. Of course he had no right, as I have said, to leave the car at that point, unless the conductor announced that the passengers would change cars at that point, and the train stopped shortly afterwards, and in consequence of that announcement, and the

slowing up of the cars at that time, and their stoppage shortly after, the passenger had reason to believe from the direction of the conductor, that he was at the station where he should get off.[6]

4. That the defendant company having provided a safe mode of egress and a landing platform and station, and the deceased having voluntarily chosen to go from the car on another side from that on which the station stood, and having by reason of this, his voluntary conduct, met his death, this action cannot be sustained.

Answer: This point has already been answered in what I have said in the general charge and in answer to the previous point. If he voluntarily chose to go from the car as he did, and by his voluntary conduct met his death, then of course the plaintiff cannot recover.[7]

5. That as a common carrier, the defendant was bound only to provide for the safe transportation of passengers, and their safe egress from the line of the road, and that the defendant, in this instance, having done so, and the person killed did not avail himself of it, but left the train at an improper time and in an improper way, was not under the protection of the company any longer than he was on the train, and the accident occurring afterwards, by his own negligence, the plaintiffs cannot recover.

Answer: This point is simply an amplification of the previous points, and I have already sufficiently answered it in what I have said.[8]

6. That apart from any rule or notice upon the subject, it is negligence in a man to stand upon the platform of a railroad car when in motion.

Answer: This is correct law, and is affirmed.

7. That the evidence in this case shows that the accident to William McCormick, the deceased, would not have occurred if he had not been standing upon the platform of the cars of the defendant, and that he was therefore chargeable with contributory negligence, and the plaintiffs cannot recover in this action.

Answer: If the car was in motion, then of course he would have no right to be on the platform, and would have no right to get off; and if the car was in motion when he thus got on

the platform and got off, then, as I have said, there can be no recovery. But whether he was on the platform when the car was in motion, and whether he got off at the invitation of the conductor, is the question which I submit to the jury.[9]

8. In no event can there be any recovery in this case greater than the sum of $5,000, because of the acceptance of the act of April 4, 1868, by the Philadelphia, Wilmington & Baltimore Railroad Company, the defendant, as shown by the certified copy of the resolution of said company given in evidence.*

Answer: That point is disaffirmed.[10]

9. There is no evidence of negligence upon the part of the defendant in this case, and the verdict of the jury must be for the defendant.

Answer: This point is disaffirmed. There is evidence for the consideration of the jury upon the question of negligence.[11]

The jury returned a verdict in favor of the plaintiffs for $5,000. A rule for a new trial having been discharged, judgment was entered upon the verdict, when the defendant company took this writ, assigning as error, inter alia:

1–3. The answers to the plaintiffs' points.[1 to 3]

4–11. The answers to the defendant's points.[4 to 11]

*Mr. John J. Pinkerton*, for the plaintiff in error:

1. The error to be complained of in this case, was its submission to the jury without any evidence of negligence upon the part of the defendant or its agents. The only negligence attempted to be established was the manner in which the announcement was made by the conductor, and the subsequent stopping of the train. Assuming that the conductor made the announcement as detailed by the plaintiffs' witnesses, is this negligence? The coaling station was one ninth of a mile from the platform where the deceased was to get off to change cars, and of this distance the bridge occupies 123 feet. It is not negligence in a conductor to notify passengers of their approach to the station at that short distance away from it: Railroad Co. v. Aspell, 23 Pa. 151; C. W. &. M. R. Co.

---

*See Penn. R. Co. v. Bowers, ante, 183.

v. Peters, 6 Amer. & Eng. R. C. 126; Penn. R. Co. v. White, 88 Pa. 332.

2. Young McCormick was riding where he had no right to be, and with his hands so incumbered with an umbrella and valise that they could not be used in holding to the platform of the car. He was also guilty of negligence in being on the wrong side of the train, away from the platform provided for passengers alighting at Wawa. The night was dark; it was near midnight, and every circumstance and surrounding required the greatest vigilance and caution: Camden, etc., R. Co. v. Hoosey, 99 Pa. 492; Penn. R. Co. v. Ogier, 35 Pa. 71; Penn. R. Co. v. Zebe, 37 Pa. 423; Sullivan v. Railroad Co., 30 Pa. 238; Del. etc. R. Co. v. Cadow, 120 Pa. 572.

3. The test of contributory negligence is found in the affirmative of the question, did that negligence contribute in any way or degree to the production of the injury complained of? If it did, then there can be no recovery: Creed v. Railroad Co., 86 Pa. 145; Pass. Ry. Co. v. Boudrou, 92 Pa. 480; Monongahela City v. Fischer, 111 Pa. 13; Lancaster City v. Kissenger, 1 Penny. 250; Railroad Co. v. Norton, 24 Pa. 469; Oil City F. S. Co. v. Boundy, 122 Pa. 449; hartiers Tp. v. Phillips, 122 Pa. 601; Catawissa R. Co. v. Armstrong, 49 Pa. 187.

*Mr. William Butler* (with him *Mr. Thos. S. Butler*), for the defendants in error:

1. Undoubtedly, a conductor may properly announce a change of cars before reaching a station. But if at night, with no artificial light to assist the passenger, a conductor direct a change of cars, and then, while that order is ringing in the ears of those who are dependent on him for guidance, stops his train where obedience to the order means inevitable death, it is clear that a case is constituted from which a jury may with entire propriety find negligence. Granting that there might be differences of opinion as to the reasonable conclusions which a passenger should draw from the conduct of those in charge of the train, the determination of disputed inferences is as much for the jury as the determination of disputed facts: Penn. R. Co. v. White, 88 Pa. 332; Penn. R. Co. v. Peters, 116 Pa. 206.

2. Upon the question of contributory negligence, the duty of the deceased consisted in mere ordinary care under the circum-

stances, and it was the province of the jury to say whether he did it or not. It was for them to determine whether or not the order given by the conductor to change cars, at a time when the train was slowing up, immediately followed by a stop, amounted to an invitation to leave the car. When the measure of duty is ordinary and reasonable care, and the degree of care varies according to the circumstances, the question of negligence is necessarily for the jury: Penn. R. Co. v. Peters, 116 Pa. 206; Penn. R. Co. v. White, 88 Pa. 327; Johnson v. Railroad Co., 70 Pa. 357; Lee v. Woolsey, 109 Pa. 124; Penn. R. Co. v. Ogier, 35 Pa. 71.

OPINION, MR. CHIEF JUSTICE PAXSON:

This case is upon all fours with Railroad Company v. Edelstein, argued and decided at the present term of the court: 23 W. N. 342. It was there held that where the conductor of a train had announced that the next stoppage would be at Jenkintown, and the train stopped short of Jenkintown for a valid reason, but no notice was given to the passengers that it had not reached the station, nor any request or notice to them to retain their seats, and a passenger stepped off in the darkness of the night, fell into a creek and was thereby injured, the question of the negligence of the defendant company must be submitted to the jury. It is true, in that case, when the train stopped, some one called out " Jenkintown," which no doubt induced the passenger injured to leave the car under the impression the train had reached the station. But we do not think that fact distinguishes that case from this.

Here the deceased was a passenger on a train from Philadelphia to West Chester. The night was dark. It was said there was no light in the car, and the train was crowded with passengers. Just before the train reached Wawa station the conductor passed through the car and announced that passengers for West Chester and intermediate stations would change cars at Wawa station. Shortly afterwards the train stopped, not at the station, but upon a bridge. No announcement was made that the train had not reached the station, and the deceased, who was a passenger, stepped off in the darkness, fell through the bridge, and was killed. Under such circumstances it was not error to submit the question of the negligence of

the defendant company to the jury. The deceased had a right to suppose that the train had reached the station. Having stopped at a place of peril for passengers to alight, at a time when they had a right to suppose from the notice previously given that the train had reached the station, proper attention to the safety of the passengers would have required some notice or warning to them to retain their seats. The unexpected stoppage of the train, as in Railroad Co. v. Edelstein, supra, was well enough, and for anything that appears, for a sufficient reason. This may happen from various causes connected with the safety of the passengers, but where it occurs in a place of danger, and under circumstances which justify passengers in the belief that it has reached a station, some notice ought to be given. This is especially so on a dark night when passengers are exposed to more than usual peril in getting off the train. We do not attach much importance to the fact that the deceased got off on the wrong side of the train. It does not appear that he would have fared any better had he alighted on the opposite side. Knowledge of the fact that the platform and station at Wawa were on the side opposite to the one on which the deceased alighted, was not brought home to him. Had the accident occurred in the daytime the case might possibly have been ruled upon different principles. Under the circumstances we see no cause to disturb this judgment and it is accordingly

Affirmed.