## Englehaupt *v.* Erie Railroad Company, Appellant.

*Negligence—Railroads—Alighting from train—Stopping of train on bridge —Notice to passenger.*

It is the duty of the carrier of passengers not only to exercise the strictest vigilance in receiving and conveying a passenger to his destination, but also to set him down safely at a station at the termination of his journey. It is likewise the duty of the carrier to announce the name of the station on the approach of a train, and to afford passengers sufficient time to alight in safety. If after this announcement the train for any cause makes its next stop short of, or beyond, the station, the conductor or brakeman should announce the fact before the passenger attempts to leave the train, and their neglect to do so will be a violation of duty for which the carrier is responsible.

In an action by a passenger against a railroad company to recover damages for personal injuries, the case is for the jury, and a verdict and judgment for plaintiff will be sustained where the evidence for the plaintiff, although in all essentials contradicted by the witnesses for the defendant, tended to show that the plaintiff on a dark night in alighting at what he thought was a station stepped onto a bridge and fell into a river; that from some words which he had with the conductor before the stop, he was given to believe that the next stop would be at the station; and that the conductor was on the platform, saw him descend and gave him no warning of his perilous position.

Argued May 2, 1904. Appeal, No. 76, Jan. T., 1904, by defendant, from judgment of C. P. McKean Co., Feb. T., 1903, No, 119, on verdict for plaintiff in case of John Englehaupt, *v.* Erie Railroad Company. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before BOUTON, P. J.

At the trial it appeared that on November 22, 1892, at about 8 : 30 in the evening plaintiff fell through a bridge in alighting from a train near the station of Riverside. The evidence relating to the accident is given in detail in the opinion of the Supreme Court.

The court refused binding instructions for defendant, and submitted the case to the jury.

Verdict for plaintiff for $4,460 on which judgment was entered for $2,000, all above that sum having been remitted. Defendant appealed.

*Error assigned* amongst others was in refusing binding instructions for defendant.

*George L. Roberts*, of *Roberts & Carter*, with him *D. H. Jack*, for appellant.—The evidence was insufficient to justify the court in submitting the question of the negligence of the defendant to the jury : Mooney v. Penna. R. R. Co., 203 Pa. 222 ; Lonzer v. Lehigh Valley R. R. Co., 196 Pa. 610 ; Rothchild v. R. R. Co., 163 Pa. 49 ; Howard Express Co. v. Wile, 64 Pa. 201 ; Corcoran v. Penna. R. R. Co., 203 Pa. 380 ; Knox v. P. & R. Ry. Co., 202 Pa. 504 ; Bornscheuer v. Consolidated Traction Co., 198 Pa. 332 ; Boehmer v. Traction Co., 194 Pa. 313 ; Kurfess v. Harris, 195 Pa. 385 ; Muscarro v. R. R. Co., 192 Pa. 8 ; Robb v. Connellsville Boro., 137 Pa. 42 ; Watkins v. Union Traction Co., 194 Pa. 564 ; Penna. R. R. Co. v. Aspell, 23 Pa. 147 ; Graham v. Penna. R. R. Co., 139 Pa. 149 ; McCracken v. Traction Co., 201 Pa. 378.

*J. P. Mullin*, of *Mullin & Mullin*, for appellee.—The case in question is almost a parallel case to that of Philadelphia, W. & B. R. R. Co. v. McCormick, 124 Pa. 427. See also Bard v. Phila. & Reading Ry. Co., 199 Pa. 94, and Blauvelt v. Del., Lack. & W. R. R. Co., 206 Pa. 141.

OPINION BY MR. JUSTICE MESTREZAT, May 9, 1904 :

We entirely agree with the learned counsel of the defendant company that under the evidence in this case and the charge of the court, the jury would have been justified in returning a verdict for their client. Four or five of their witnesses testified that the train carrying the plaintiff stopped at Riverside station ; and that he alighted there and after doing so, they saw him on the ground at the station. The learned trial judge instructed the jury that " if he got off on the ground as testified to by the four witnesses at Riverside (station) safely and then went ahead and walked into the river, this company would not be liable for any damage which he sustained." It was claimed by the defendant that the train made three stops in the vicinity of Riverside station ; the first at the Pennsylvania Railroad junction, next at Riverside station, and again a few feet beyond the station for the purpose of putting off the plaintiff's

dog which was in the baggage car. The theory of the defense, amply sustained by abundant testimony if believed by the jury, was that the plaintiff got off the train at Riverside station to which his ticket entitled him to be carried, and that after leaving the train and it had again started, he followed it to look after his dog which was still on the train and in doing so he fell through the bridge and into the river.

The case, however, as presented by the plaintiff, is that the train stopped but once near Riverside station and that was just beyond the station, the smoking car, in which he was riding standing on the bridge over Allegheny river. He testified that he was sitting in the front of the car which was immediately in the rear of the baggage car; that when the whistle blew for the junction he thought it was for Riverside station and arose from his seat and was told by the conductor that the platform was farther down; that he then resumed his seat for a moment until the train stopped, the conductor in the meantime telling the brakeman to open the door of the baggage car and let the plaintiff get his dog; that he untied the dog and with his coat on his arm and a gun in his hand walked down the steps of the front platform of the smoking car while the conductor was standing on that platform; that when he left the steps he stepped on something he thought was the station platform, "stooped around to see if the dog was coming," and fell into the river. The accident occurred about eight thirty o'clock of the evening of November 22, 1902, and the testimony shows that at that hour it was very dark. Frank Holton, a passenger who sat near the plaintiff in the car, testified that he thought the train made but one stop at Riverside station; that after the car had stopped he went to the front platform, found that the car was on the bridge, and that it was so dark he "could not see anything." William Davis, another passenger who sat four or five seats in the rear of Englehaupt in the car, testified that the train stopped but once and that was on the bridge near the station; that as it neared the Pennsylvania Railroad junction the conductor said something to the plaintiff who then sat down; that the train next "pulled into the bridge at Riverside" and the plaintiff got up and went out the front door of the coach, the front end of which was ten or fifteen feet on the bridge; that the car window was up and in a minute or less he

heard him fall into the river; that the conductor was on the platform when the plaintiff went out the car door and remained there until he fell into the river; that the night was very dark and the plaintiff could not see without a light.

Such is the story told by the plaintiff and his witnesses on which he relies to convict the defendant's employees in charge of the train of a failure of duty in carrying him to the destination named in his ticket. It is wholly irreconcilable with the direct and positive testimony of four or five of the defendant's witnesses. As observed above, those witnesses testified that the train stopped three times in the vicinity of Riverside station and that the plaintiff alighted at the station in safety. If the plaintiff and his witnesses be believed, there was but one stop made by the train and that was not at the station, but on the bridge beyond, which concededly was an improper and unsafe place to discharge passengers. Believing from the suggestion of the conductor that it was at Riverside station, the plaintiff alighted when the train stopped, and did so with the conductor's consent and while he was standing on the car platform from which the plaintiff descended from the train. These facts, taken in connection with the further fact that at the time the plaintiff left the train it was very dark, disclosed a plain violation of duty on the part of the defendant company, assumed by its contract, to exercise the utmost degree of diligence and care in carrying the plaintiff as a passenger from Bradford to Riverside station.

It is the duty of a carrier of passengers not only to exercise the strictest vigilance in receiving and conveying a passenger to his destination, but also to set him down safely at a station at the termination of his journey. It is likewise the duty of the carrier to announce the name of the station on the approach of the train and to afford passengers sufficient time to alight with safety. If after this announcement the train for any cause makes its next stop short of, or beyond, the station, the conductor or brakesman should announce the fact before the passengers attempt to leave the train, and a neglect to do so will be a violation of duty for which the carrier is responsible. In Weller *v.* London, Brighton, & South Coast Railway Company, L. R. 9 C. P. 126, BRETT, J., says: " Merely overshooting the platform is not negligence. But, if the porter has called

out the name of the station, and the engine driver has overshot
the station, and the train has come to a standstill, the com-
pany's servants are guilty of negligence if they do not warn
passengers not to alight.   At all events, the jury may from
these facts infer negligence.   If the name of the station has
been called out, and the train has come to a standstill, ·no
warning being given to the contrary, the jury may very prop-
erly say that a passenger is guilty of no want of reasonable
care in getting out.   He has a right to suppose that the train
has reached the spot where it is intended that he shall get out."
In Central Railroad Company v. Van Horn, 38 N. J. L. 133,
Chief Justice BEASLEY speaking for the court said: " The
court would not be warranted in saying that it is not negligence
to give notice of the approach to a station, and then stop the
·train short of such station, in the night-time.   Such a course
would naturally tend to jeopard passengers, for it would in-
duce them to believe that they had arrived at the station desig-
nated, and they would, in the ordinary course, go to the car
platform.   At night, this must be the inevitable result . . . .
When a station is called, the passengers have the right to infer
that the first stop of the train will be at such station."   Phila-
delphia, Wilmington & Baltimore Railroad Company v. Mc-
Cormick, 124 Pa. 427, is a case very similar in many of its facts
to the one in hand.   There the conductor, on a dark night,
announced the approach to a station where the passengers were
to change cars, and afterwards stopped the train on a bridge
without giving notice that the station had not been reached.
A passenger arose from his seat, descended from the steps, fell
over the bridge and was drowned.   It was held that under
the circumstances the passenger had the right to suppose that
the train had reached the station; and that proper attention
to the safety of the passengers required some notice or warning
to them to retain their seats.   Chief Justice PAXSON deliver-
ing the opinion of the court said: " The deceased had a right
to suppose that the train had reached the station.   Having
stopped at a place of peril for passengers to alight, at a time
when they had a right to suppose from the notice previously
given that the train had reached the station, proper attention
to the safety of the passengers would have required some no-
tice or warning to them to retain their seats. . . . This (unex-

pected stoppage of the train) may happen from various causes connected with the safety of the passengers, but where it occurs in a place of danger, and under circumstances which justify passengers in the belief that it has reached a station, some notice ought to be given.   This is especially so on a dark night when passengers are exposed to more than usual peril in getting off the train."

The defendant's negligence was clearly a question for the jury under the conflicting evidence in the case and was properly submitted by the trial court.   Whether the plaintiff exercised the care required of him under the circumstances when alighting from the car was, we think, also for the jury.   If there was a reasonable doubt as to the facts or the inferences to be drawn from them as to the plaintiff's contributory negligence, the question could not be withdrawn from the jury.   A verdict either way on the testimony presented here could be sustained. The plaintiff had reason to believe from the action of the conductor, if we credit his testimony, that the train had stopped at the station and that in leaving the car he was alighting on the platform at the station.   It was so dark that he could not see where he was stepping when he descended from the car platform.   This was done in the presence of the conductor who gave him no warning of his perilous position.   By reason of the darkness the plaintiff saw no danger in attempting to alight, and the silence of the conductor who saw him as he descended the steps was a tacit invitation to him to leave the car in the way he did.

The judgment is affirmed.