DIGGS v. LOUISVILLE & N. R. CO. (two cases).

DUNNAWAY v. SAME.

(Circuit Court of Appeals, Sixth Circuit. November 6, 1907.)

Nos. 1724-1726.

1. ACTION—TRIAL—CONSOLIDATION OF CAUSES—POWERS OF FEDERAL COURTS.
   Under Rev. St. § 921 [U. S. Comp. St. 1901, p. 685], which authorizes federal courts to consolidate "causes of a like nature or relative to the same question," a Circuit Court has power in its discretion to consolidate for trial separate actions brought against a railroad company to recover for the death of persons who were killed at the same time and in the same manner.

2. CARRIERS—LIABILITY OF RAILROAD COMPANY FOR DEATH OF PASSENGERS—OPERATION OF TRAINS.
   Three young men traveling together were passengers on a railroad train which approached Knoxville, Tenn., which was their destination, after dark. The trainmen had announced that the next station would be Knoxville, as required by the state statute, but had not called the station, when the train stopped on a narrow trestle in order to make use of a Y in turning before entering the city. The next morning the bodies of the young men were found near together under the trestle. Upon the trial of a consolidated action against the railroad company to recover for their deaths, there was evidence that they left the car together, while on the trestle, and tending to show that they fell over the edge as they stepped off. *Held*, that neither the announcement of the name of the next station nor the stopping of the train thereafter before it was reached was negligence, nor was either an invitation to passengers to alight before the station was called, which imposed on defendant the duty of warning them or rendered it liable for the deaths of plaintiffs' intestates.

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

G. W. Pickle, for plaintiffs in error.
J. H. Frantz, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This was a suit to recover for the wrongful death of William Turpin through the negligence of the Louisville & Nashville Railroad Company. Against the objection of the plaintiffs in error, it was consolidated for trial with two similar cases, one brought by the administrator of James Gamble and one by the administrator of W. W. Dunnaway, who met their deaths at the same time and in the same way. At the close of the testimony for the plaintiffs, the court directed the jury to return a verdict for the defendant. It is claimed the court erred in consolidating the cases and erred in instructing for the defendant.

We are satisfied that under section 921 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 685] the court had the power to consolidate these cases for trial. They involve the same transaction, the witnesses were the same, and we can see no good reason to criticise the exercise of the court's discretion in the premises.

The evidence which the court withheld from the jury showed substantially the following facts: The three young men, Turpin, Gamble, and Dunnaway, were raised in Anderson county, Tenn., about 25 miles from Knoxville. They were not accustomed to railway travel. They left their homes on the 19th of February, 1906, to look up a brother of one of them, who they heard, was working some miles the other side of Knoxville. Apparently they did not find him, and on the 20th they started back to Knoxville. Late in the afternoon of that day they got on a passenger train of the defendant at Mentor, a station seven or eight miles from Knoxville. This train reached Knoxville about 6:30 p. m. There was but one station, Chandler, between Mentor and Knoxville. After leaving Chandler, the train-man announced that the next station would be Knoxville. The train, after leaving Chandler, ran along the Tennessee river for some distance, and then crossed over to Knoxville on a bridge and trestle. By this time it was quite dark. On the Knoxville end of this trestle a switch led off from the main track. At the end of this switch there was a narrow platform on the right as you approached Knoxville, which was used in connection with the switch. Beyond this platform, going in the direction of Knoxville, the trestle for some distance remained the width required for one track only, and then broadened as the switch left the main line. About 200 feet beyond the point of this switch, the main line divided into a Y; one track running to the right to the passenger depot, and the other to the left to the switching yards. It was customary to use this Y in order to change the direction of the train before running into the depot. When the train reached the trestle, it stopped presumably short of the switch. The three young men, one a boy of 15, got up from their seats in the smoker, which was in the forward part of the train next to the baggage car, and went out the front door. The station of Knoxville had not yet been called, nor any reason given them to

believe that they were at Knoxville, except the fact that the announcement had been made that the next station would be Knoxville. This announcement had been made a few minutes before the train stopped. Three witnesses put the time from one to one and a half or two minutes, one says before the train reached the bridge, and several testified that the custom on the road was to announce the next station shortly after leaving the last one. Such announcement was not regarded as a call of the station, which was made subsequently when the station was reached. About 6 o'clock the next morning, on the 21st of February, a witness who passed under the trestle found the dead bodies of three young men, who were subsequently identified as Turpin, Gamble, and Dunnaway. They lay close to one another, and no footprints were near them. The court below, conceding that the deceased persons were passengers, after referring to the fact that the laws of Tennessee required the railroad company to announce the next station, stated that, if the insistence of the plaintiffs was correct, "when the company does it, it would have to guard against anybody jumping off before the train reached the station, would have to put a man in each door, and keep them from jumping off, if the train should happen to stop for any purpose before it reached the station"; and directed a verdict in favor of the defendant in each case.

We think there was testimony from which the jury might have inferred that the three unfortunate young men were passengers, and that they alighted from the train on the trestle and met their deaths by falling from it to the place where they were found. They may have fallen directly from the train through the trestle, or from the trestle after alighting from the train, and they may have fallen from the trestle by missing their footing while trying to proceed in the direction of Knoxville after the train had passed, or by being pushed off by the train after it had got again in motion. There was no testimony showing precisely where the train stopped. There was a small platform on the right, located at the point of the switch, which was used by railroad men to stand on while operating the switch. If the train stopped opposite that platform, the young men had a place to stand, but after the train passed on they would have found themselves isolated, in a dangerous position, and it would naturally have seemed necessary to them to walk on in the direction of Knoxville, whose lights they could see in the distance. If they did this, after leaving the small platform, a few steps would have brought them to the narrow single track trestle above the place they were found, and from which they must have fallen. At this point the ties were 12 feet and 10 inches in length, and a passenger car is about 11 feet, 6 inches in width. An engineer who made a survey of the track testified that a "passenger alighting on this single track trestle might touch the edge of the ties, although I don't think he would. The ends of the ties were approximately practically under the outside of the steps, and the steps would put him where he would fall; he might catch two or three inches of the ties, two inches." It was necessary, in order to make a case for the jury, for the plaintiffs to present some testimony tending to show that the young men, without any fault on their part, alighted from the train and met their

death because of the negligent conduct of the railroad company or its employés. In view of the facts, the negligence must have consisted either in making the announcement that Knoxville would be the next station before it was reached, or in stopping on the trestle after the announcement was made and before the station was reached, or in so stopping without warning the passengers to keep their seats, because the station had not yet been reached.

As to the announcement, it was one required by the laws of Tennessee. Shannon's Code, § 3070. This statute came before the Supreme Court of Tennessee in the case of Payne v. Railroad Co., 106 Tenn. 167, 61 S. W. 86. There there was a call of the station and a passenger alighted before the train had stopped. The effect of the decision was to hold that the passenger was not justified in alighting while the train was in motion because of the announcement. It is to be noticed, however, in this case that the announcement, which was made as the train approached the station, almost amounted to a call which is made just as the station is reached. The difference between an announcement under the Tennessee statute and a call under ordinary railway usages must be kept in mind. An announcement under the Tennessee statute is not a notification that the station has been reached, and an invitation for passengers to alight. It serves the purpose of advising passengers in advance of what the next station will be, so that they may be ready to alight when it is reached. It is always made subject to the usages of railways. It does not commit the railway company to a verbal guaranty that the station announced will be the first stop. The railroad company retains the right to control the movement of the train, and if it is necessary to stop for any proper purpose before reaching the station, for instance, to open or close a switch, or to cross another railroad, or to use a Y, it has the right to do so, without notifying the passengers. In other words, the announcement is to be treated as a statement that the next station will be the place named, and not that the next stop will be at the station. Accordingly, in Minock v. Railway Co., 97 Mich. 425, 56 N. W. 780, it was held that a railroad company which had announced the next station was not obliged to warn passengers not to alight when it stopped at a railway crossing before the station was reached.

We have examined a number of cases where, after calling the station, the train either stopped short or overran, with the result that the passenger alighted in a dangerous place and was injured. Under such circumstances, the railway company has been almost uniformly held responsible. This is in accordance with the well-established rule that a carrier of passengers is in duty bound not only to use the strictest vigilance in receiving and conveying a passenger to his destination, but also to put him off safely at a station at the termination of the journey. As a corollary it has been held that it is likewise the duty of a carrier to announce the name of the station on the approach of the train, and to afford passengers sufficient time to alight with safety. Englehaupt v. Erie R. R. Co., 209 Pa. 182, 185, 58 Atl. 154; Weller v. London, Brighton, etc., Ry. Co., L. R. 9 C. P. 126; Van Horn v. Central R. R. Co., 38 N. J. Law, 133; P. W. & B. R.

R. Co. v. McCormick, 124 Pa. 427, 16 Atl. 848; Bridges v. North London Ry. Co., L. R. 7 H. L. 213; McNulta v. Ensch, 134 Ill. 46, 24 N. E. 631; Memphis & Little Rock Ry. Co. v. Stringfellow, 44 Ark. 322, 51 Am. Rep. 598; Ellis v. Chicago, M. & St. P. Ry. Co., 120 Wis. 645, 28 N. W. 942.

The present case, however, is not one where the station had been called and the train either stopped short or overran it, so that the passenger alighted in a dangerous place and received injuries. This case is more like that of Mitchell v. Grand Trunk Ry. Co., 51 Mich. 236, 16 N. W. 388, 47 Am. Rep. 566, where the station was announced or called before arriving at a railway crossing or junction, 300 or 400 feet from the station. The train stopped at the crossing, and the plaintiff in attempting to leave the car was hurt. The court said the real cause of the injury was the mistaken supposition of the passenger that the train had stopped for the station. There was nothing at the spot to indicate a landing place. The stoppage of cars was required by statute, as well as by usage. The judgment below was reversed on the ground that there was nothing to show any negligence on the part of the company. In the case of Ill. Central R. R. Co. v. Warren, 149 Fed. 658, 79 C. C. A. 350, it was held that the announcement of the next station, although made on near approach to the station, was not an invitation to a passenger to leave his seat and attempt to alight before the train actually stopped. Because he did this, the passenger who was injured was held guilty of contributory negligence.

We have given the present case careful consideration. The case of the plaintiffs rests upon the contention that the stoppage of the train on the trestle after the next station had been announced constituted an invitation to the young men to alight. We think that a clear distinction must be made, as we have said before, between the announcement of the next station and the call of the station at which the train is in the act of stopping. We think that in the present case no passenger of ordinary intelligence and in the exercise of ordinary care would regard the stopping of the train on the trestle as an indication that Knoxville had been reached and the time had come for him to alight, and that the idea that such a view would be taken by any passenger was not within the reasonable contemplation of either the conductor or any of the trainmen. Now, if in the actual course of events these three passengers could not be expected to alight merely because the train had stopped on the trestle, then there was no duty imposed upon the trainmen to warn them to keep their seats. Trainmen have a right to credit passengers with ordinary common sense. Passengers must exercise common sense, common care, or answer for the lack of it. In this country passenger trains are not run upon the theory that the passengers must be locked in when the train is in motion, and only released when the station is reached and the trainmen let them out. Passengers are supposed to have knowledge of common railway usages, of the way in which trains are ordinarily run and handled. While the present case excites our sympathy, we are unable to satisfy ourselves that the court below was wrong in directing a verdict for the defendant. Of course, there was

a possibility that testimony might have been presented which would have showed or at least have tended to show that the defendant was negligent, but no testimony of this sort was introduced, and it is a well-known rule that negligence can neither be presumed nor guessed at. Powers v. Marquette Ry. Co., 143 Mich. 379, 106 N. W. 1117.

The judgments of the lower court are affirmed. The joint writ of error in case No. 1,684 is dismissed for want of jurisdiction.