## Dallas, Administratrix of T. R. Dallas, Deceased v. Illinois Central Railroad Company.

(Decided October 11, 1911.)

### Appeal from Graves Circuit Court.

1. Carrier of Passengers—Negligence.—Where a brakeman on a passenger train opened the door of the car and called out the station, and the train slackened its speed and stopped in the usual time, these facts constituted an invitation to the passenger to alight when the train came to a stop, and were circumstances from which the jury might well infer negligence upon the carrier's part, if the passenger was injured in attempting to alight.

2. Carrier of Passengers—Negligence—Peremptory Instruction.—Where the brakeman opened the door and called out the station, and the train slackened its speed and stopped at a railroad cross-

ing, and the passenger went on to the platform of the car about the time the car started with a severe jerk, and the passenger fell or was thrown from the platform and killed, it was error for the trial judge to peremptorily instruct the jury to find for the defendant.

3. Negligence—How Determined.—When the question arises upon a state of facts on which reasonable men may fairly arrive at different conclusions, the fact of negligence cannot be determined until one or the other of these conclusions has been drawn by the jury. The inferences to be drawn from the evidence must either be certain and incontrovertible, or they cannot be passed upon by the court, but should be left to the jury.

4. Negligence.—Negligence cannot be conclusively established by a state of facts upon which fair minded men may well differ.

W. J. WEBB for appellant.

ROBBINS & THOMAS, EDWARD C. CRAIG, C. F. SIVLEY and TRABUE, DOOLAN & COX for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

On October 8th, 1909, T. R. Dallas and L. J. Turnbow, aged 16 and 18 years respectively and residents of Kentucky, but working temporarily on a farm near Arcola, boarded the train of the appellee at Arcola, Illinois, to go to Mattoon, about 25 miles distant. The train left Arcola at about 9:30 p. m., and reached Mattoon shortly after 10 o'clock. The boys occupied a seat on the west side and near the center of the ladies' coach. They were riding in a vestibule car, having doors on the sides of the platform, which were kept closed while the train was moving. Mattoon is a city of about 25,000 inhabitants, while Arcola has about 2,000 inhabitants. It is not shown that Dallas was at all familiar with Mattoon, its approaches or surroundings. As the train approached Mattoon the brakeman or porter came to the door of the car, called out "Mattoon," and passed on through the car, leaving the door open. The train began to slacken its speed, and Dallas arose from his seat and started toward the front door of the car. The train continued to slow up, and about the time he reached the front door of the car it came to a full stop. Turnbow, in the meantime, had arisen from his seat but had moved only a short distance when the stop was made. The train then made a start, and in doing so it knocked Turnbow against the seat, turning him around, and swinging him against the end of the seat. In the meantime, Dallas had gotten

pretty close to the door, and was probably at the door or on the platform of the car, at the time the train started. Turnbow held his seat and saw no more of Dallas. Upon reaching the station, which was about a quarter of a mile distant, Turnbow made a search for Dallas; and thinking he might have fallen from the train, Turnbow ran back up the track to what he thought was about the place where the train had stopped, but did not find him. About half an hour later Dallas' body was found near the west side of the track by one of the railroad employes. One arm had been cut off, and his skull frightfully crushed. Dallas lived in Graves County, Kentucky; and subsequently this suit was brought by his administratrix to recover damages from the appellee under the Illinois Statute, which provides a cause of action whenever the death of a person is caused by the wrongful act, neglect or default of another.

The petition is framed upon the idea that when the train made the start after it had stopped, it started with an unusual, unnecessary, and sudden jerk forward, with such force that the door of the car in which Dallas was standing was slammed forward with great force and struck him, knocking him from the platform and thereby inflicting the injuries which caused his death. The appellee denied the charge of negligence against it and averred that Dallas was injured by reason of his own negligence and relied upon the law of Illinois upon that subject.

Arcola is north of Mattoon, and the passenger station at Mattoon is on the west side of the track of the appellee's railroad, and south of the track of the New York Central Railroad, which crosses the Illinois Central Railroad at Mattoon. At Mattoon the Illinois Central Railroad runs almost due north and south, and the New York Central Railroad runs almost directly east and west. The passenger station of the Illinois Central Railroad is 125 feet south of the New York Central Railroad crossing. Dallas' body was found at a point about a thousand feet north of the railroad crossing.

Turnbow was the only witness who testified as to the manner in which Dallas met his death; and at the close of the plaintiff's testimony the circuit judge peremptorily instructed the jury to find for the defendant. From that judgment Dallas' administratrix prosecutes this appeal.

There is some confusion in Turnbow's testimony upon the two questions (1), as to whether the door was propped back and left standing wide open by the brakeman when he called out the station of Mattoon, and (2) as to the point in the car, or on the platform, at which Dallas had arrived when the train started after it had stopped. Turnbow finally concludes, however, that by the time the train had stopped, Dallas was standing in the door, or probably out of the door upon the platform —he cannot positively say which was the fact.

The question presented for decision therefore is this: Was the opening of the door followed by the calling out of the station "Mattoon" by the brakeman, and the subsequent stopping of the train, an invitation to Dallas to get off the train at that point? Did Dallas have the right to suppose, after the announcement by the brakeman, that the car had stopped at the proper place to get off?

The injury having been received in the State of Illinois, the case is to be controlled by the law of that State. L. & N. R. R. Co. v. Whitlow's Admr., 105 Ky., 1; L. & N. R. R. Co. v. Harmon, 23 Ky. Law Rep., 871; I. C. R. R. Co. v. Jordon, 117 Ky., 512.

The rule as to the duty of carriers to their passengers is thus given in Chicago City Railway Co. v. Shaw, 220 Ill., 532:

"While the carrier is not an insurer for the absolute safety of the passenger, he does, however, in legal contemplation, undertake to exercise the highest degree of care consistent with the principal operation of its road to secure the safety of the passenger, and is responsible for the slightest negligence resulting in injury to the passenger, provided the passenger is at the time of the injury exercising ordinary care and caution for his own safety."

The same rule was approved in Chicago & Alton Railroad Co. v. Byrum, 153 Ill., 131. And in Chicago City Railway Co. v. Bundy, 210 Ill., 47, the court said:

"The giving and modification of instructions are also assigned as error. The first instruction given for appellee was as follows:

" 'Common carriers of persons are required to do all that human care, vigilance and foresight can reasonably do, consistent with the character and mode of conveyance adopted and the practical prosecution of the business, to prevent accidents to the passengers riding

upon their trains, getting upon them or alighting from them.'

. ''This is substantially a correct statement of the law, as held by the decision of this court in Chicago & Alton R. R. Co. v. Byrum, 153 Ill., 131; C. B. & Q. R. R. Co. v. Mehlsack, 131 Ib., 61; and Chicago & Alton R. R. Co. v. Pillsbury, 123 Ib., 9.''

In applying the foregoing rule to the facts of this case, appellant relies principally upon B. & O. S. W. R. R. Co. v. Mullen, 217 Ill., 203; 2 L. R. A. (N. S.), 115. In that case Mullen was traveling from St. Louis to Flora, Illinois, and the servants of the railroad company opened the vestibule doors of the coach in which Mullen was riding, and called the station of Flora. Mullen then went out on the vestibule platform where he met the conductor and brakeman, and one of them informed Mullen that the depot was ''right there.'' pointing directly opposite to where the train was, and induced Mullen to believe that the train had stopped at the station. It was night, and in attempting to alight from the train before it had reached the station Mullen was thrown under the wheels and injured. The evidence also shows that, when the train approached Flora from the west it first stopped at a point about 200 feet west of the crossing of the track of the main line of the road with what was called the Springfield Division running north and south, and then proceeded to the depot, which was located east of the crossing, in the angle formed by the main and Springfield tracks. After the accident Mullen was found lying near the main track about 40 feet west of the crossing. The conductor and brakeman both denied that they were at the place where Mullen said they were when the accident occurred, or that either of them made any statement to him as to the location of the depot, or that they saw him get off. In upholding a verdict for Mullen the court held that there was evidence justifying the jury in coming to the conclusion that Mullen was induced to alight by the invitation of the appellant's employes, and if his version of what happened was correct he had reasonable grounds for believing he was at the proper place for alighting. And in closing its opinion, the court said:

''As to the question of the negligence of the appellee, it is clear that, if the conductor or the brakeman, or both of them, stood on the platform and permitted the

appellee to alight at the hour, and under the circumstances already stated, and induced him to believe that he was alighting at the depot, then the company was certainly guilty of such negligence as authorizes a recovery against it.  The appellee was a passenger upon the appellant's train, and the implied contract with him to carry him safely necessarily included the furnishing of reasonable opportunity to alight from the train safely at the end of his journey."

It will be seen that the Mullen case turned upon the statements made to Mullen by the conductor and brakeman, and that that case is much stronger for the complainant than is the case at bar, where it is not made to appear that any statement was made to Dallas other than the mere announcement when the brakeman called out "Mattoon," accompanied by the opening of the door and leaving it opened.

But the following language from the Mullen case, which substantially covers the facts of the case at bar must not be overlooked:

"In the case at bar, if notice was given to the appellee that the next station, at which the car would stop, was Flora, and, after such notice was given, the car did actually stop at the crossing in question before the depot was reached, the appellee had a right to suppose that the stoppage of the car was at the proper place for him to get off.  The evidence tends to show that the appellee had no knowledge, that the train would stop at a railroad crossing before it reached the depot, and, then after such stoppage, would move on again, and stop at the depot."

In McNulta, Receiver, et al. v. Ensch, 134 Ill., 46, Ensch was traveling from Springfield to Starnes Station, and complained that the train failed to stop at Starnes a sufficient length of time to enable him to get off the train in safety; that he was injured in attempting to get off the train in the night time, and after it had stopped, and had almost immediately, suddenly started again.  In discussing the law applicable to Ensch's case, the court said:

"When the train stopped at the station, under the circumstances already stated, the plaintiff had the right to presume that the defendant proposed to discharge his passengers at that point, and to act upon that assumption, and that the stop at the platform should have been

long enough to allow the plaintiff to alight in safety. The evidence tended to show that the ordinary signal was given for the station, and also, as found by the Appellate Court, the station was announced in the cars, in the usual manner, by either the conductor or brakeman, and the defendant could not shield himself from liability to plaintiff, who started to get off immediately following such signal and announcement showing that those in charge of the train intended to go further east before discharging the passengers, of which no notice was given. The stop at the platform, as to the plaintiff, under the peculiar facts of this case, might have been properly regarded by him as the stoppage of the train at the point where it was intended to let off passengers. Having by the acts and the conduct of his servants justified the plaintiff in attempting to get off the train, the duty of the defendant then attached to stop his train a sufficient length of time to enable the plaintiff to reach the platform in safety  His duty to the plaintiff, whom he had induced to believe that the train had reached the point at which he was to depart therefrom, was in respect of the place where the train first halted, and not in respect of the place where it finally stopped."

And in Chicago & Alton R. R. Co. v. Arnol, 144 Ill., 261, the court used this language:

"In this country it is the almost universal practice to announce the station which the train is approaching before it is reached, and while the train is still in motion, and it is universally understood that such announcement is intended as notice to passengers, without warning to the contrary, that the next stop of the train will be at the station announced. The purpose is understood to be, to enable the passengers intending to alight at that station, to be ready to leave the cars promptly, without undue haste or inconvenience to themselves or unnecessary delay of the train.  *  *  *  If the conduct of appellant's servants and their management of the train amounted to an invitation to them to alight, and would be so understood and acted upon by reasonable and prudent persons, and appellee. acting in good faith upon such invitation, arose, upon the train coming to a standstill, for that purpose, the jury would be justified in finding that she was in the exercise of ordinary care for her own safety. If she, by reason of such apparent invitation, was placed in peril from the further movement of the

train, the duty at once arose, on the part of the appellant, to stop its train a sufficient length of time to permit her to leave it in safety, or to warn her of the danger in time to avert injury.  *  *  *  The duty of the carrier was to be measured by the peril to the passenger whom it had accepted and undertaken to safely carry, and who had been induced by the conduct of its servants to assume a position of danger.''

Chicago & Alton R. R. Co. v. Winters, 175 Ill., 293; Chicago & Alton R. R. Co. v. Gore, 202 Ill., 188, are to the same effect.

In England v. Boston & Maine R. R. Co., 153 Mass., 490, the plaintiff sought to excuse her conduct in alighting from a moving train, on the ground that the calling of the station by the brakeman, and the opening and fastening back of the door by him, and his failure and the failure of any one in the employ of the defendant to warn her of the danger, constituted an invitation to her to alight, and an assurance, on which she was justified in relying, that it was safe to do so.  The court said:

''Assuming that the action of the brakeman in calling the station and fastening back the door was to be regarded as an invitation, it was clearly not an invitation to alight from a moving train, but from the train after it had come to a stop.  It did not authorize the plaintiff to get off from the train when in motion.  But we do not think the action of the brakeman can, as a matter of law, be regarded as an invitation.  It was, at the most, simply an announcement that the train was near the station, and would presently stop, and was given in order that passengers intending to alight there might prepare themselves to do so when the train stopped.''

The case at bar, however, differs from, and is stronger for the plaintiff, than any of the cases above referred to.  The doctrine announced in the England case, that the opening of the door and the calling of the station by the brakeman was an invitation to alight only after the car had stopped, is sound and unobjectionable.  But in the case at bar, there is no evidence that Dallas attempted to alight while the car was moving, while it clearly appears that the car stopped pursuant to the announcement made by the brakeman, and almost immediately started again with a severe jerk.  No contributory negligence is shown on the part of Dallas; and applying the doctrine of the England case, supra, he had

the right to assume that the announcement of the station was an invitation to alight when the car had stopped.

In Weller v. London, et al., Ry. Co., L. R. 9 C. P., 126; 8 Moak Eng., 441, on the approach of a train to the station the porter called out the station, and the train was brought to a standstill, whereupon Weller stepped out of the car and fell down an embankment, whereby he was injured. The train had overshot the platform. It was night, and there was no light near the spot, and nothing was done to intimate that the stop was a temporary one, or that the train was to be backed. Under that state of facts, Justice Brett said:

"I agree that to call out the name of the station, before the train had come to a standstill, is no evidence of negligence on the part of the company. I also agree that merely overshooting the platform is not negligence. But if the porter has called out the name of the station, and the engine driver had overshot the station, and the train has come to a standstill, the company's servants are guilty of negligence if they do not warn passengers not to alight. At all events, the jury may, from the facts, infer negligence."

And, in the well considered opinion of Chief Justice Beasley, in Central R. R. Co. v. VanHorn, 38 N. J. L., 131, it is said:

"The court would not be warranted in saying that it is not negligence to give notice of the approach to a station, and then to stop the train short of such station, in the night time. Such a course would naturally tend to jeopard the passengers, for it would induce them to believe that they had arrived at the station designated, and they would, in the ordinary course, go to the car platform. At night this must be the inevitable result. It is said in the brief of the counsel of the defendant that it was right to give notice at a long distance from the depot, so that the passengers might prepare to leave the cars. This may do when the train is not to stop before it reached the station. When a station is called the passengers have the right to infer that the first stop of the train will be at such station."

Likewise, in Tabor v. D. L. & W. R. Co., 71 N. Y., 489, the plaintiff was a passenger for the town of Willards. She was not familiar with that station, but knew it was the next station to Chenango Forks, and about three-quarters of a mile therefrom. The night was dark,

and there was no depot or station light, or anything at Willards to indicate the stopping place to a person not familiar with it. She knew when the train passed Chenango Forks, and the probable time it would require to run to Willards, at which time the train came to a full stop. It had, in fact, run by the station. Before reaching it the brakeman announced the station; several passengers arose to leave; plaintiff then arose from her seat near the center of the car, walked out upon the platform, took hold of the rail, stepped down one step, and was in the act of stepping to the second, when the train started back with a violent jerk, throwing her off the car and injuring her. In that case the court held it was a question for the jury whether, in the exercise of reasonable care and prudence, the company should not have given notice, to passengers desiring to alight at the station, that the train had not come to a final stop, but would back up; and that the plaintiff was justified, under the circumstances, in supposing she had reached her destination, and in attempting to leave the car; at least that the question of contributory negligence on her part was proper for the jury. See also Milliam v. New York C. & H. R. R. Co., 3 Abb. N. C.,; affirmed 56 N. Y., 585.

In Columbus & Indianapolis R. R. Co. v. Farrell, 31 Ind., 408, Farrell was a passenger upon the appellant's train upon a dark night. The conductor stopped the train and called "Cumberland"—the name of the station. Farrell could not see whether there was any platform, or where he was going to alight, but, in good faith, relying on the announcement made by the conductor, he stepped off in the dark into a culvert twenty feet deep, and was injured. Passing upon the question of contributory negligence upon the part of the plaintiff, the Supreme Court of Indiana said:

· "If the plaintiff did not alight from the train until it had been fully stopped, nor until the defendant's servants had announced the name of the station, or it had been announced from the proper and usual place of making such announcements, he had the right to believe that the train had reached a proper stopping place, and that he could safely alight, and, if he did then alight, and did so without knowing the danger of the place, and in consequence of the darkness of the night he had no reasonable opportunity of ascertaining the danger, and he was injured in so alighting, he will be entitled to a verdict."

Mitchell v. Chicago & Grand Trunk Ry. Co., 51 Mich., 236; 47 Am. Rep., 566, is relied upon as an authority exempting the railroad company from liability in cases of this character; but it is easily distinguishable from the present case, and the cases above cited. In the Mitchell case the accident happened in the daytime—a material circumstance in all cases of this kind—since to alight under such circumstances is clearly negligence on the passenger's part.

One of the best considered opinions upon this subject is Memphis & Little Rock Ry. Co. v. Stringfellow, 44 Ark., 322; 51 Am. Rep., 598. In that case Stringfellow got on the train at Forest City to go to Brinkley. On the outskirts of Brinkley the track of the Texas & St. Louis Railroad crossed the track of the Memphis & Little Rock Railroad. When the train had arrived within a short distance of the station at Brinkley, the brakeman called out the name of that station. The train ran a little further and stopped a few minutes, as is customary, before crossing the track of another road. The night was dark, and Stringfellow, thinking he had reached his destination, arose from his seat and went on to the platform and looked out on one side; he saw no platform or other indication of a depot, but only a bright light ahead, which he took to be the headlight of a locomotive. He then went across the platform to the other side, and just at this time the train began to move slowly forward. Supposing he was about to be carried beyond his station, Stringfellow stepped off, fell, and was badly injured. It was contended in that case, as in this, that under the state of facts above narrated, Stringfellow was not, as a matter of law, entitled to recover, and that no negligence was shown on the part of the company. After reviewing the principal cases, the court reached this conclusion:

"To apply the principle discussed to the case in hand: It was no negligence in the Receiver's servants to stop the train before crossing the track of the St. Louis & Texas road; that was only a proper precaution to prevent collision. It would also have been no negligence to announce the name of the station before stopping, provided passengers had been warned to keep their seats, or otherwise informed that the stop was only a temporary one. But, to make the announcement without such caution, was an invitation to passengers bound for that

station to alight when the train came to a stop, and was a circumstance from which a jury might well infer negligence, if, in attempting to alight, an injury was received.''

See also McGee v. Missouri P. R. R. Co., 92 Mo., 208; 1 Am. St. Rep., 706; Wards v. Chicago & N. W. R. Co., 165 Ill., 462; Falk v. N. Y. S. & S. W. R. Co., 56 N. J. L., 380; Miller v. East Tenn. V. & G. R. Co., 93 Ga., 630; Phil. W. & B. R. Co. v. McCormick, 124 Pa., 427; International & G. N. R. Co. v. Eckford, 74 Texas, 274; Cartwright v. Chicago & G. T. R. Co., 52 Mich., 606, 50 Am. Rep., 274; Terre Haute & I. R. Co. v. Beech, 96 Ind., 346, 49 Am. Rep., 168, holding the carrier liable; and in none of which cases was there any invitation to the passenger to alight, other than that arising by implication from the calling of the station and the stopping of the train.

Wolford v. N. Y. C. & H. R. R. Co., 102 N. Y., Supp., 1008; Wolf v. Chicago & N. W. R. R. Co. (Wis.), 111 N. W., 514; Florida E. C. R. Co. v. Woods (Fla.), 43 So., 775, are to the same effect.

It is not shown that Dallas attempted to alight from the car while it was in motion. To do so would be clearly negligent. As was pertinently said in Glascock v. C., N. O & T. P. Ry. Co., 140, 725:

''All who ride upon trains know that the announcement is usually made of the train's approach to the station and the car doors opened before it actually reaches it, to enable the passengers to leave the cars when the train stops, but these acts do not constitute an invitation to the passengers to get off the train before it stops, and a passenger, who under these circumstances, voluntarily undertakes to leave the train while in rapid motion, is guilty of negligence. Hughlett v. L. & N. R. R. Co., 15 R., 178; Adams' Admr. v. L. & N. R. R. Co., 82 Ky., 608; Thompson's Negligence, Vol. 3, Sec. 2881.''

See also L. & N. R. R. Co. v. Morris, 23 Ky. Law Rep., 449.

In disposing of the case the trial judge held, either that the appellee was not guilty of negligence, or that Dallas was guilty of contributory negligence. In so holding we think he was in error.

As was said by Chief Justice Cooley in Detroit & Milwaukee R. R. Co. v. Van Steinburg, 17 Mich., 122:

''When the question arises upon a state of facts on which reasonable men may fairly arrive at different con-

clusions, the fact of negligence can not be determined until one or the other of these conclusions has been drawn by the jury. The inferences to be drawn from the evidence must either be certain and incontrovertible, or they cannot be decided upon by the court. Negligence cannot be conclusively established by a state of facts upon which fair minded men may well differ.''

After mature consideration of the authorities, and the facts of this case. we are of opinion that when the brakeman opened the door and called out the station, and the train slackened its speed and stopped in the usual time, there was an invitation to Dallas to alight when the train came to a stop, and circumstances from which the jury might well infer negligence upon appellee's part, if Dallas was injured in attempting to alight.

Reversed and remanded for a new trial.