At the close of plaintiff's evidence defendant's counsel moved for a nonsuit upon the ground that the plaintiff had failed to make out any cause of action; had not shown any negligence on the part of the defendant which was the proximate cause of the accident; *Page 364 
had failed to show freedom from contributory negligence. The plaintiff's counsel asked to go to the jury upon the question whether the plaintiff exercised due care in view of all the circumstances; also upon the question of the plaintiff's alleged contributory negligence and defendant's negligence. The trial judge granted the motion for a nonsuit and denied plaintiff's several requests to go to the jury. The plaintiff duly excepted to the rulings of the court. The court thereupon ordered that the exceptions be heard at the Appellate Division in the first instance. The Appellate Division overruled the exceptions, denied motion for new trial and dismissed the complaint, with costs.
The plaintiff is a farmer residing in Chili, a town in Monroe county, situated about ten miles from Rochester, being the first station west of that city on the defendant's railroad. At the time of the accident, which occurred August 27th, 1905, between midnight and one o'clock in the morning, the plaintiff, in alighting from a train on a very dark night, fell so that the wheels of the car passed over his left arm, necessitating amputation at the shoulder a few hours later. The plaintiff, on the day in question, joined an excursion to Niagara Falls with his family, Mr. and Mrs. Miller, neighbors, and their family, and three hired men; the party consisted of twelve persons. After visiting Niagara Falls the party arrived in Buffalo on their return at six o'clock P.M. and waited until 10:30 P.M. for the first train stopping at Chili station. The train consisted of a number of cars, and being crowded the party were compelled to go through two or three cars to the forward one, which was next the engine, there being no baggage car on the train. It is in evidence that in the front portion of the car there were no lights, no trainman with lantern, and the curtains, or most of them, were pulled down; also, that there was no light on the rear of the engine; that the station at Chili was unlighted and closed at the time the train arrived; that it was a very dark night, and no objects could be seen when looking off from the front platform of the forward car. The Chili station was on the south *Page 365 
side of the track. Mr. Miller testified that when the conductor came in he gave him his ticket, and when he observed that it was for Chili, he said: "What, Chili, and I says yes, and there is twelve of us to get off, and he says, don't be asleep when you get there."
It was proved that when the train stopped at Chili the forward car was from fifteen to eighteen rods east of the station. On this evidence the jury could have found eighteen rods, which is nearly three hundred feet. It was also proved that at the point where the plaintiff and Miller alighted, the distance from the lower step to the ground was from two and one-half to three feet; the jury could have found it three feet; that in front of the station there was a platform which extended to the track, nearly on a level with it.
It appears that a short interval after the call of the Chili station by the conductor, or trainman, the plaintiff and four of his party started for the front door of the car. All of them swore that they neither saw nor felt any motion of the train, and supposed it had stopped. Miller testified as to the situation while he and the plaintiff were standing on the platform just before alighting, as follows: "I didn't feel any motion whatever in the car; there wasn't no motion we could see, and if there was we wouldn't have got off; it seemed to be perfectly still; there was no motion in the engine; Mr. Bartle stepped off ahead of me; as he stepped off the step I was behind him; I stepped off immediately after him; I fell on my hip and struck my head on the gravel there * * *."
The plaintiff testified: "I walked down the steps, and of course I could not see whether it was the very last step or not, but I went down a step or so, and stopped to see if the train was stopped, and I was sure it had stopped, and at that I stepped off; I couldn't tell what happened when I stepped off; the next I remember was when I got up."
The judgment of nonsuit rests upon the assumption that defendant was free from negligence, and that alighting from a train while in motion is presumably an act of contributory *Page 366 
negligence on the part of the plaintiff. These questions were clearly for the jury to answer, and it was error for the trial judge to direct a judgment of nonsuit. The learned Appellate Division cites Solomon v. Manhattan Railway Co. (103 N.Y. 437) and Mearns v. Central R.R. Co. of New Jersey (163 N.Y. 108). In 103 N.Y. 442 (supra), Judge ANDREWS, writing for the court, said: "It is, we think, the general rule of law, established by the decisions in this and other states * * * that the boarding or alighting from a moving train is presumably and generally a negligent act per se, and that in order to rebut this presumption and justify a recovery for an injury sustained in getting on or off a moving train, it must appear that the passenger was, by the act of the defendant, put to an election between alternative dangers, or that something was done or said, or that some direction was given to the passenger by those in charge of the train, or some situation created, which interfered to some extent with his free agency, and was calculated to divert his attention from the danger, and create a confidence that the attempt could be made in safety."
These remarks were made in a case where the plaintiff boarded a moving elevated train in New York city and was injured by coming in contact with a water pipe, receiving fatal injuries. It was proved that the plaintiff's intestate had traveled over this route many times and was perfectly familiar with the situation. It was held his legal representatives could not recover. In163 N.Y. 108 (supra) this court held that the plaintiff was guilty of contributory negligence in alighting from a train in motion at the Jersey City station. It appears that as the train was running into the station, the conductor called out, "All out, Jersey City, last stop." Judge HAIGHT, in writing for this court, thus describes the situation: "The plaintiff then leaned against a partition and stood waiting for half a minute, during which time the train was still in motion, but moving smoothly and without any jars or jerks. The guard then opened the vestibule door and stepped across to the vestibule of the other car. At this *Page 367 
the plaintiff, supposing the train had stopped, stepped out into the vestibule, took the rail with his right hand and passed down the steps and thence off on to the platform. As he did so he fell and both feet were crushed, one above the ankle and the other across the toes. It appears that he stepped from the train while it was in motion and was just entering the depot shed." It further appeared that the accident happened on the 20th of December, at six o'clock in the evening. Here was a train entering the great terminal station in Jersey City, a place which is sufficiently lighted. The plaintiff was in a situation where the slightest observation would have acquainted him with the fact that the train had not come to a full stop. There is certainly nothing in this case that makes it applicable to the case at bar save the fact that the train was in motion when plaintiff attempted to alight.
In Bartholomew v. N.Y.C. H.R.R.R. Co. (102 N.Y. 716) the plaintiff after, as she supposed, the train had stopped at the Rochester station, where she was to change cars, passed out with other passengers onto the platform of the car, and by a sudden jerk of the train was thrown from the platform and injured. This court said: "The plaintiff was in a strange place in the night-time, and upon her inquiry, as the train neared Rochester, the conductor informed her that she must change cars at the first place at which the train would stop; that `Rochester' would be called and she must take the second right-hand train. Sometime after this the the brakeman called `Rochester, change cars.' The train was then either stopped or slowed down so that to her, in the inside of the car, it appeared to have stopped. She was bound to act upon appearances, and after making the announcement, if the train was run so slow as to appear to a person of ordinary intelligence and observation to have stopped, ordinary care for the safety of the passengers required the train to be so run and managed as not to endanger their lives, and a sudden jerk or start, without any warning, when the passengers were upon their feet moving toward the platform of the cars, was sufficient evidence of *Page 368 
carelessness to impose liability upon the defendant. As to any one in the cars when the train appeared to have stopped, it was the same as if it had stopped, and the same duty rested upon the defendant to care for the safety of the passengers."
Brooks v. Boston Maine R.R. Co. (135 Mass. 21), was an action by a woman against a railroad corporation for personal injuries received by her while a passenger on the defendant's train. The plaintiff testified that she looked when she was stepping off, but that it was so dark she could not see the platform, and that she did not look to see whether the train was moving because she felt sure it was still; and there was also evidence that there was no object which any one could see from which it could be determined whether the train was moving or not. It was held that this situation raised a question that should have been submitted to the jury.
In Delamatyr v. Milwaukee Prairie Du C.R.R. Co. (24 Wis. 578) it was held that where a railroad company, by its negligence, compels a passenger to choose between incurring some risk in leaving the train, and being exposed to other inconveniences to which it has no right to subject him, and he is injured in getting off under circumstances which would not prevent a person of ordinary prudence from doing so, the company is liable. (See, also, Phil., W. B.R. Co. v. McCormick,
124 Pa. St. 427; D., L. W.R.R. Co. v. Perret,60 N.J. Law, 589.)
In the case at bar we have a situation for the jury to determine whether it justified the plaintiff in assuming that the train was not in motion, and that it was incumbent upon him and his party to alight from the train in pitch darkness as speedily as possible, and failing to do that, they would be carried to Rochester in the middle of the night. There is also sufficient evidence requiring the trial judge to submit to the jury the question whether the defendant was guilty of negligence in the manner of arriving at the Chili station on the night in question. The situation is described as very dark, and the plaintiff was, in the language of Judge ANDREWS already quoted (103 N.Y. 442), "put to an election between *Page 369 
alternative dangers, or that something was done or said, or that some direction was given to the passenger by those in charge of the train, or some situation created, which interfered to some extent with his free agency, and was calculated to divert his attention from the danger, and create a confidence that the attempt could be made in safety."
The judgment of the Appellate Division should be reversed and a new trial ordered, with costs to abide the event.
CULLEN, Ch. J., VANN, WERNER, WILLARD BARTLETT and CHASE, JJ., concur; HAIGHT, J., not voting.
Judgment reversed, etc.