THOMAS et al. v. SAN PEDRO, L. A. & S. L. RY. CO.†

(Circuit Court of Appeals, Ninth Circuit. May 3, 1909.)

No. 1,612.

**1. CARRIERS (§ 347*)—INJURIES TO PASSENGERS—CONTRIBUTORY NEGLIGENCE—RIDING ON PLATFORM—QUESTION FOR JURY.**

Civ. Code Cal. § 483, requires carriers to furnish on the inside of passenger cars sufficient room and accommodations for all passengers to whom tickets are sold for any trip, and section 484 declares that every railroad corporation shall have printed and conspicuously posted on the inside of its passenger cars its rules and regulations regarding fare and conduct of its passengers, and in case any passenger is injured on or from the platform of a car, in violation of such printed rules, the carrier shall not be responsible for damages unless it has failed to comply with section 483. *Held*, that under such sections, as construed by the Supreme Court of California, a passenger who voluntarily goes on the platform of a car while the train is in motion, in violation of rules properly posted, etc., as required, is not necessarily negligent, as a matter of law, precluding a recovery for injuries sustained.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1346–1397; Dec. Dig. § 347.*]

**2. CARRIERS (§ 347*)—INJURIES TO PASSENGERS—DANGEROUS POSITION—PLATFORM—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.**

In an action for death of a passenger resulting from the wreck of his train due to a misplaced switch, whether decedent was negligent in going to the front platform of the car in which he was riding, after his station had been announced, and the train had slackened speed, immediately before the accident, was for the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1346–1397; Dec. Dig. § 347.*]

In Error to the Circuit Court of the United States for the Southern Division of the Southern District of California.

Action at law by plaintiffs in error, Maggie Thomas and John Thomas, her husband, brought in the United States Circuit Court for the Southern District of California, Southern Division, against the defendant in error, the San Pedro, Los Angeles & Salt Lake Railroad Company, for damages in the sum of $25,000 for the loss of their son, John Thomas, who was injured and killed in the derailment and wreck of defendant's train while riding as a passenger near Los Angeles, Cal., on March 3, 1907.

In an agreed statement of facts it was stipulated and admitted, among other things, in substance, that the defendant in error was and is a corporation organized and chartered under the laws of the state of Utah, and is and was a common carrier of passengers and freight for hire in the state of California, having its principal place of business at Los Angeles, owning, operating, and controlling a line of railroad running from San Pedro by way of Los Angeles to Salt Lake City, and extending also to Pomona; that on March 3, 1907, John Thomas purchased of defendant railway company a ticket at Pomona to travel from Pomona to Los Angeles, and that he was accepted to be transported by said company to Los Angeles as a passenger on one of its trains and in one of its passenger coaches, to wit, in the car known as a "smoker"; that as the train approached the station at Los Angeles and at a point at or near Seventh street the train left the main track and ran into an open switch, causing the engine, tender, baggage car, and smoker to jump the track; the engine, tender, and baggage car were wrecked, and the baggage car torn away from the smoker, leaving the front platform of the smoking car, in which Thomas was riding, open and exposed; that the front end of the smoker collided with and against the boiler attached to the engine,

throwing Thomas about the platform, thereby bruising and wounding him, and that he was scalded by the escaping steam, and died a short time thereafter from the effects of the injuries received. It appears from the statement that as the train approached the station defendant's brakeman or conductor announced that the next stop of the train would be at defendant's Fourth street station, the train slackened its speed, the whistle was sounded, and the train, which had been running from 35 to 40 miles an hour, began to slow down and reduce its speed to about 25 miles an hour, after which Thomas and a companion left their seats, stating in the hearing of other passengers in the car that they were going to get off at that station, and went upon the front platform of the car, and immediately thereafter the engine of said train struck the open switch, the train was derailed, and the wreck occurred in which Thomas was injured, wounded, and scalded, and from which injuries death resulted.

The cause of the engine overturning and the derailment of the smoker and other cars was stipulated to be as follows:

"That at the said point where the said engine overturned there is a side track leading from the main track of defendant's railroad to its freightyards, and shortly before the said train reached said point one of the members of a switching crew in the employ of the defendant, and employed upon an engine engaged in switching cars in the yard of said defendant, turned the switch controlling said side track so said switching engine could pass from said main track to said side track; that, after said switching engine had passed from said main track to said side track, the said switch was closed so that trains could pass along said main track, but thereafter the employés of the defendant in charge of said switching engine, while switching cars in said yard, negligently and carelessly backed the said switching engine upon said side track so close to said switch that the points of said switch were forced partly open, so that, when the engine of the train upon which plaintiffs' said son was a passenger reached said switch, the front wheels continued along and upon the main track while the rear wheels were caught in the point of said switch, causing said wheels to turn out upon the rails of said side track, and causing said engine to overturn and the steam in the boiler thereof to escape. That said negligence of the defendant caused said wreck; * * * that the smoking car upon which said plaintiffs' son had been riding left the rails of said railroad track, but was not overturned nor wrecked nor injured to any material extent."

It appears further from the statement that East Seventh street where the derailment occurred was 2,500 feet from the Fourth street station, where it was stated Thomas intended to leave the train; that the printed rules of the company were conspicuously posted at both ends of the car, which forbade passengers from riding on the platform or steps of the cars, and were required to remain in their seats while the train was in motion.

In addition to the agreed statement of facts, Maggie Thomas, the mother, testified that she and her husband had not been living together for the past seven years; that he did not contribute to her support during that time; that immediately prior to the accident the family consisted of her son, John, who was then 23 years of age, and her daughter, a girl 22 years of age; that her son earned from $40 to $50 per month.

After the testimony of the mother and the reading of the agreed statement of facts, plaintiff rested, and the defendant moved for a nonsuit, which was allowed by the court, and it was ordered that judgment be entered in favor of the defendant. The case is here upon writ of error.

Drew Pruitt and Morton, Pruitt & Goodrich, for plaintiffs in error.

A. S. Halsted and S. M. Johnstone, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). It is assigned as error that the Circuit Court granted defendant's motion for a nonsuit. This motion was based mainly upon the ground that it ap-

peared from the evidence that the deceased was guilty of contributory negligence in going upon the platform of the car while the train was in motion, in violation of the rules and regulations of the company.

Whether, under the circumstances of the particular case, the injured passenger is guilty of contributory negligence, is generally a question of fact for the jury, but as the negligence of the defendant in this case and the resulting death took place in California it is contended by the defendant that the plaintiffs' right of action rests on the law of that state, and under that law the question was one of law and not of fact. Section 483 of the Civil Code of California provides:

"Every railroad corporation must furnish, on the inside of the passenger cars, sufficient room and accommodations for all passengers to whom tickets are sold, for any one trip, and for all persons presenting tickets entitling them to travel thereon; and when fare is taken for transporting passengers on any baggage, wood, gravel, or freight car, the same care must be taken and the same responsibility is assumed by the corporation as for passengers on passenger cars."

Section 484 of the same Code provides:

"Every railroad corporation must have printed and conspicuously posted on the inside of its passenger cars its rules and regulations regarding fare and conduct of its passengers; and in case any passenger is injured on or from the platform of a car, or on any baggage, wood, gravel, or freight car, in violation of such printed regulations, or in violation of positive verbal instructions or injunctions given to such passenger in person or by any officer of the train, the corporation is not responsible for damages for such injuries, unless the corporation failed to comply with the provisions of the preceding section."

It was admitted that the defendant company provided sufficient seats in the smoking car for all passengers using the same, and that its rules and regulations as required by section 484 of the Civil Code were properly posted.

In Mitchell v. Southern Pacific R. R. Co., 87 Cal. 62, 25 Pac. 245, 11 L. R. A. 130, the plaintiff was in the smoking car attached to a train running down a steep incline leading to the bed of a river on a new and curved track. The car was derailed and overturned, and the plaintiff was injured. He testified that he had gone out upon the platform immediately before the accident in consequence of the fear that some disaster would occur; that he had no sooner reached the platform than the car was overturned and he was thrown upon the ground. The evidence of the defendant tended to show that the plaintiff had been upon the platform some minutes before the accident occurred. There was a question as to the burden of proof resting upon the plaintiff to show defendant's negligence. The case was submitted to a jury under instructions from the court upon that question, and upon the law relating to the defense that the plaintiff had been guilty of contributory negligence in going upon the platform of the car while the train was in motion. The jury returned a verdict in favor of the plaintiff. In the Supreme Court it was contended by the defendant: First, that the burden of proof was upon the plaintiff to show negligence on the part of the defendant; and, second, that the plaintiff was guilty of contributory negligence. With respect to the first question the court held that the derailment and overturning of the car were undisputed facts, and with the other circumstances the showing was suffi-

cient to place upon the defendant the burden of proving that the injury was not caused by any want of care on its part. With respect to the second question, the court instructed the jury as follows:

"If you find, from the evidence, that at the time plaintiff left his seat in the smoking car there was no imminent peril of life or limb, and no apparent danger, but that such imminent peril of life or limb, or apparent danger, arose after plaintiff took his position on the platform of the smoking car, then plaintiff cannot recover, and your verdict must be for the defendant."

This instruction was approved by the Supreme Court, and it is upon this instruction that the defendant in this case contends that under the California statute, if a passenger on a railroad train voluntarily goes on the platform of a car while the train is in motion in violation of the rules and regulations of the company, he assumes the risk of the position and cannot recover damages for injuries received. If this were the only instruction upon this phase of the case, the contention of defendant might be accepted as a correct interpretation of the statute by the Supreme Court; but the trial court gave other instructions which were also approved by the Supreme Court; among others, the following:

"If you believe that the plaintiff went upon the platform under a reasonable apprehension of a derailment of the train, and for the purpose of jumping off in case of an accident, and while there for that purpose was injured by the overturning of the car, I instruct you that his being on the platform under these circumstances was not riding or standing on the platform within the meaning of the rule which prohibits such riding or standing."

The court further instructed the jury:

"If the danger of overturning was imminent, and the plaintiff, acting upon the instinct of self-preservation, placed himself in the position which appeared to him, as a reasonable man, to be most safe, and made such choice as a person of ordinary prudence and care placed in the same situation might have made, this does not constitute negligence on the part of the plaintiff. The peril of remaining in the car or going upon the platform is to be judged by the circumstances as they then appeared, and not by the result."

From these instructions to the jury it appears that the question whether the plaintiff was guilty of contributory negligence did not depend upon the admitted fact that he had gone upon the platform of the car in violation of the rules and regulations of the company, but whether in so doing he acted under all the circumstances with ordinary care and prudence; and the Supreme Court approved the instructions of the trial court under which this question was submitted to the jury for determination. Furthermore, the Supreme Court refers with approval to the case of Buel v. New York Central R. R. Co., 31 N. Y. 319, 88 Am. Dec. 271. In that case the plaintiff seeing an approaching train, left his seat in the car and rushed to the door to escape from the danger of an impending collision between the train he was on and the approaching train. The other passengers neither saw nor had notice of the impending danger, remained in their seats, and were uninjured. The question was whether the plaintiff was guilty of contributory negligence in going upon the platform. The court refers to the facts that justified his action, but says:

"At all events, it was for the jury and not the court to say whether plaintiff's conduct, in view of the circumstances, was rash or imprudent or amounted to negligence."

The court further says:

"The statute was intended to prevent the imprudent act of standing or riding on the platform, but not to absolve railroad companies from responsibility for every injury which might happen at that place when a passenger in passing over it, while justifiably entering or leaving the cars."

To the rule of the company that passengers are not allowed to ride on the platform, and are required to remain in their seats while the train is in motion, there are therefore necessarily certain exceptions which custom has sanctioned, and which have become admittedly reasonable and proper under certain circumstances. Passengers are permitted to pass from one part of a car to another while the train is in motion in going to and from the lavatory and closet, and they are invited to pass from one car to another while the train is in motion in going to and from the dining car. It is also usual for passengers to prepare to leave their car before the train reaches the station at the place of destination, and they are permitted to proceed towards and sometimes upon the platform of the car for that purpose while the train is still in motion. It is therefore manifest that this rule is subject to the qualification that a passenger may leave his seat in a car while the train is in motion and go upon the platform of the car if under all the circumstances such action is prudent and careful, and whether it is so or not is a question of fact for the jury.

In Railroad v. Pollard, 22 Wall. 341, 22 L. Ed. 877, the evidence for the plaintiff showed that the defendant's train, on which the plaintiff, Mrs. Pollard, was a passenger, was approaching the depot at Jersey City. Mrs. Pollard was standing up in the section which her traveling party had occupied, with her back to the seat in which she had been sitting, engaged in fixing her little girl's hair preparatory to leaving the car. The train was moving slowly and about to enter the depot, and passengers were getting out and off. There was then a jerk, or lurch, or concussion of the cars which threw Mrs. Pollard backward so that the lower part of her spine struck against the arm of the seat, causing her serious and permanent injury. The plaintiff having rested her case, the defendant moved for a nonsuit on the ground that there was such contributory negligence on the part of Mrs. Pollard, as shown by her standing in the car, her position and occupation at the time of the accident, as would prevent a recovery, and that there was no such negligence shown on the part of the defendant as would warrant the case to be submitted to the jury. The court refused a nonsuit, which was made the subject of an exception upon the conclusion of the case. A verdict was returned in favor of the plaintiff. In the Supreme Court the defendant assigned as errors the giving of certain instructions requested by the plaintiff and the refusal to give certain instructions requested by the defendant. The judgment of the trial court was affirmed. The syllabus of the reported case contains the following statement:

"Whether a passenger in a rail car, standing up in it when getting into the station house, at the close of a journey, but before the actual stoppage of the car, is guilty of negligence in the circumstances of the case, is a question of fact for the jury to decide under proper instructions."

In Wylde v. Northern R. R. Co., 53 N. Y. 156, the plaintiff was a passenger on a train arriving at Jersey City. On entering the depot the locomotive was detached from the train. The plaintiff arose from his seat to button his coat in preparation for leaving the car. The cars, after the locomotive was detached moved on through the depot and struck with great force the "bumper" at the end, throwing the plaintiff down and over the arm of a chair behind him, causing the injuries which were the subject of the action. The court said:

"There is no ground for imputing negligence to the plaintiff. It is probable that if he had retained his seat the injury would not have happened. He had no notice of danger, and had a right to assume that the train would be stopped in the usual manner. The train had reached its destination, and the plaintiff left his seat with a view of leaving the car as soon as the train stopped. He did as passengers usually do, and what the company must have known they were accustomed to do, and the plaintiff could not have supposed that the act was inconsistent with safety."

In Barden v. Boston, Clinton & Fitchburg R. R. Co., 121 Mass. 426, the plaintiff was a passenger in one of the defendant's cars. The name of the station to which the plaintiff was going having been announced, the plaintiff left his seat and stood in the aisle preparatory to leaving it when the car should stop, and, while so standing, the car came into collision with another car, and the passenger was thrown down and injured. The defendant contended that the plaintiff was guilty of contributory negligence, as a matter of law, which would preclude his recovery. The plaintiff contended that it was a question for the jury. If on these facts the plaintiff was guilty of such negligence as matter of law as to preclude a recovery, judgment was to be entered for the defendant, but if, on the other hand, the plaintiff as matter of law was not guilty of contributory negligence, or if that question was for the jury upon the foregoing facts, then judgment was to be entered for the plaintiff. Chief Justice Gray, speaking for the court, said:

"We can have no doubt that the contract between the parties, which required the corporation to furnish the plaintiff with a seat, did not, as matter of law, oblige him to keep it from the time he first took it until the train had come to a final stop at the place of his destination; and that the question whether he was wanting in reasonable care in leaving his seat and standing in the passageway inside the closed door, after the approach of the train to the station at which he was to alight had been announced and the car had actually entered the station, and for the purpose of hastening his departure from the car, was a question of fact for the jury."

In Romine v. Evansville, etc., R. R. Co., 24 Ind. App. 230, 56 N. E. 245, the plaintiff was a passenger on defendant's train standing inside of the car looking through the window of the rear door, his hand resting against the casing of the closet door. The conductor came into the car, opened and closed the closet door quickly; plaintiff's finger slipped into the crack when the door was opened, and was crushed by the door when it was closed. With respect to the question whether the plaintiff was guilty of contributory negligence, the court said:

"Taking into consideration the mode of construction of the commodious and convenient American passenger car, and the commonly known habits of the traveling public in our railway carriages, we are unable to regard it as negligence per se for the appellant to take the position and attitude in which the conductor saw him at the time of the injury. He had a reasonable motive for placing himself where he could take note of the appearance of the country more fully than at a side window. At least, the gratification of his inclination to view the country from the rear window, if it could be done without apparent danger, was not necessarily negligence on his part. Whether or not he exercised ordinary care, which he was bound to exercise, in so standing, and in placing his hand in such position that the finger which was injured was exposed to such injury, cannot be decided as a question of law. It was a question for the jury, under proper instructions from the court."

In Lane v. Spokane Falls & Northern Ry. Co., 21 Wash. 119, 57 Pac. 367, 46 L. R. A. 153, 75 Am. St. Rep. 821, it appeared from the evidence that, the train upon which plaintiff was a passenger having arrived at a station, the engine was uncoupled and taken by the fireman up the track a short distance for the purpose of getting water. In backing the engine down to connect it with the train, it was permitted to collide with the cars with such force as to throw the plaintiff, who was standing in the aisle of one of the coaches, to the floor, causing the injuries of which she complained. It was assigned as error in the Supreme Court that the court refused to instruct the jury as a matter of law that the plaintiff was guilty of contributory negligence because she was standing in the aisle of the car at the time the accident occurred. The court was of the opinion that to have given these instructions would have been gross error.

In Schultze v. Mo. Pac. Ry. Co., 32 Mo. App. 438, the station was announced where plaintiff was to leave the train; the whistle was blown for the station, and the train slackened its speed. Plaintiff proceeded to get out, and went on the platform and stepped down onto the second step of the platform. He then saw that the train was still in motion, and turned around to go into the car, when by a sudden jerk of the car he was thrown from the train and injured. At the close of plaintiff's evidence the defendant asked an instruction in the nature of a demurrer to the evidence, which the court overruled, and defendant excepted. The Court of Appeals said:

"It is difficult to see what act or acts of plaintiff in this case could be imputed to him as negligence. He was a passenger to Lee's Summit, and expected to get off there; the whistle was blown for this station, the train began to check, and the porter passed through the car and announced the station. There certainly was nothing careless or unreasonable in the conduct of plaintiff, in preparing to get off of the train. While he might have remained in his seat until the train came to a standstill at the depot, his approaching the door and platform in the manner stated in his evidence certainly was not such contributory negligence as to disprove the cause of action stated in his petition."

At the time of this accident, section 800 of the Revised Statutes of Missouri of 1879 provided substantially as do the statutes of California, that, in case any passenger on any railroad train should be injured while on the platform of the car in violation to the printed regulations posted up at the time in a conspicuous place inside of the passenger car then in the train, such company should not be liable for the injury. Notices as required by this statute were posted inside

the car forbidding passengers to stand on the platform. It was contended on the part of the defendant that under this statute it was negligence per se for the plaintiff to stand on the platform while the train was in motion. In referring to this defense, the court said:

"In our opinion, the case at bar does not fall within the spirit and object of section 800 of the Revised Statutes of 1879. It cannot be reasonably claimed that the plaintiff was riding or remaining on the platform of the car in the sense condemned in this statute. As before suggested, he was induced to go there to alight from the train by the conduct of defendant's agents and servants. The whistle signaled the station, the train checked, the porter announced the station. What might have been reasonably expected of a passenger expecting to leave the train at that point?"

In Bronson v. Oakes, 76 Fed. 734, 22 C. C. A. 520, the plaintiff was in the rear coach of a vestibuled train. He left the coach at night to go to the forward end of the train, and, to facilitate his return, left open the door of the sleeping coach in which he was riding. The night was dark, the vestibule was not lighted, and the train was running rapidly. On his return, in passing through the vestibule which led to the coach in which he was riding, he supposed a dim, reflected light from the windows of the sleeper was a light shining through the door of the coach which he had left open, and proceeding to enter, as he supposed, the doorway of the coach, walked through an outside vestibule door, which was left open, fell from the train, and was seriously injured. A demurrer to the complaint setting out in substance the foregoing facts was sustained in the lower court. The Circuit Court of Appeals, in passing upon the sufficiency of this complaint, said:

"It is well settled that what constitutes negligence is a question of fact for the jury, and it does not cease to be such although the facts are undisputed, for that would be to deprive a suitor of his constitutional right to have the material facts in his case tried by a jury. Whether, upon the conceded facts in this case, the act of the defendant was negligent, is the principal and ultimate fact in the case, and the decision of this fact, like any other disputed fact in a case, rests with the jury, and not with the court. The question of contributory negligence is likewise one of fact for the jury. There is no statute or law which defines the quality of every human action, and stamps it in advance as either negligent or prudent. The law cannot anticipate the conduct and actions of men in all the varying and multiplied relations they sustain to each other, and declare in advance what shall be esteemed prudent and what negligent. The facts and circumstances of this case as they are disclosed by the complaint differ from the facts and circumstances of any case that ever occurred before. or any case that is likely to occur in the future. It is manifest, therefore, that, if the court should decide as a matter of law that these facts and circumstances do or do not constitute negligence in law, it would be a case where the decision made the law, and not the law the decision. And hence the doctrine is firmly established that these questions of negligence are questions of fact for the jury to determine, and not questions of law for the court; and this is the rule where the facts are conceded as well as where they are disputed."

In Railroad Company v. Ives, 144 U. S. 409, 417, 12 Sup. Ct. 679, 682, 36 L. Ed. 485, the Supreme Court, referring to the province of the court and jury in determining what acts constitute contributory negligence, said:

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and

prudent, and what shall constitute ordinary care, under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court."

From these and other authorities that might be cited it would seem that the cases in which the court will determine the question of contributory negligence as a question of law would only be where, in the judgment of all reasonable men, but one conclusion could be drawn from the conduct of the plaintiff, and that would be in a case where he had shown such a plain and reckless disregard for his own safety in an act which, concurring or co-operating with the negligent act of the defendant, was the proximate cause or occasion of the injury complained of.

But the defendant in error cites a number of cases in which it is contended in effect that the conduct of the injured party was no more plainly reckless and negligent than in the present case, and that such conduct was decided by the courts to be contributory negligence as a matter of law.

The case of Hickey v. Boston & Lowell Railroad Co., 14 Allen (Mass.) 429, is cited as such a case. Hickey was a passenger riding in the smoking car of a train belonging to the defendant company. About 500 feet before coming into the station the smoking car, which was in front of the other passenger cars, was disconnected from the passenger cars, and the engine and smoking car switched off upon a side track, while the other cars continued upon the main track until they reached the station. On the occasion of the accident, before the smoking car was uncoupled from the passenger cars, Hickey left the smoking car, and with other passengers stepped on the front platform of the front passenger car for the purpose of riding into the station in that position. He went from the smoking car in order to avoid the inconvenience and delay which would be occasioned by remaining in the smoking car. The passenger car was proceeding at the rate of about five miles an hour, and ran against the smoking car while Hickey and others were on the front platform of the passenger car. By the collision both of Hickey's legs were broken, and he soon after died. Upon the trial of the case the plaintiff offered to show, among other things, that it had been the practice for passengers in the smoking car on this train to come out of that car just before it was uncoupled and go upon the platform of the forward passenger car, and, after the smoking car and engine had been uncoupled and switched off, to ride into the station in that position; that there was an express permission and consent to the practice and custom by the conductors and brake-

men, but only an implied one from the superintendent and directors of the road. The court held that the evidence was not material or admissible. Upon this ruling the plaintiff did not go to the jury and the case was reserved for a full court for a nonsuit to be entered if the ruling was correct. In the Supreme Judicial Court of Massachusetts the ruling of the trial court was affirmed and the nonsuit entered. It appears from the opinion of the court and the facts stated that if the deceased had remained in the smoking car he would have been switched off on the side track and finally carried to the rear end of the passenger car. To avoid this delay, he left the smoking car and took an exposed position on the platform of the passenger car in an eager desire to be first in and to arrive in the station at the front of the train rather than at the rear of the train. The safety of a person riding on the platform of the front passenger car depended at that time upon the engine and smoking car getting promptly and successfully switched away onto the side track, so that the passenger car could pass on to the station. In case of delay or any trouble with the switching, there was great danger of a collision between the forward passenger car and the smoking car. There was therefore, for one riding on the forward platform of the passenger car, good cause for a well-grounded apprehension of danger, and the disregard of this danger was clearly negligence. In passing upon this question, the court said:

"If sufficient and suitable provision be made within the car for all passengers, the managers of the train are not under obligation to restrict them to their proper places, nor to prevent them from acts of imprudence. If they voluntarily take exposed positions, with no occasion therefor, nor inducement thereto, caused by the managers of the road, except a bare license by noninterference, or express permission of the conductor, they take the special risks of that position upon themselves."

Aside from the negligence of the deceased in taking the special risks of an exposed position on the platform of the car, which under the circumstances was obviously dangerous, he did so, as the court said, "with no occasion therefor, nor inducement thereto caused by the managers of the road." In this last respect, if not in the former, the case differs from the case before the court, where the question as to the sufficiency of the inducement to justify the deceased in going upon the platform of the car at the time he did was a question of fact for the jury.

In the cases of the Memphis & Little Rock Ry. Co. v. Salinger, 46 Ark. 528 (two cases), Salinger and Goldberg, who were passengers, left their seats in the ladies' car of defendant's train and went out on the platform to smoke. They were warned by the brakeman and also by the conductor that it was dangerous to ride there, but they replied that they would go inside as soon as they had finished their cigars. While standing on the platform as the train was going over a bridge, the express, baggage, smoking, and emigrant cars broke through the bridge and turned over, either completely or partially. Salinger and Goldberg were standing on the platform between the ladies' car and the emigrant car, and were killed in the wreck. Suits were brought against the railroad company by personal representatives of the deceas-

ed to recover damages. In the trial courts the two cases were submitted to juries under instructions as to the contributory negligence of the deceased passengers. The Supreme Court, in passing upon these instructions, said:

"It is contributory negligence for a passenger to remain on the platform of a car propelled by steam when there is no reasonable excuse for so doing, and after he has been specifically warned of his danger."

The rule of this case, based, as it is, upon the passengers' reckless disregard of a specific warning of danger, is not applicable to the present case.

In Scheiber v. Chicago, St. P., M. & O. Ry. Co., 61 Minn. 499, 63 N. W. 1034, the plaintiff, riding on defendant's train, had gone on the platform of the passenger car and down on the steps as the train approached the station where he was accustomed to alight. He was led to believe that the train was going to stop, but, instead of stopping, steam was suddenly put on, the train gave a jerk, and he was thrown from the train and seriously injured. It appears that the train was running from 15 to 25 miles per hour at the time of the accident to the plaintiff. The trial court at the close of the evidence instructed the jury to return a verdict for the defendant, and it was so returned. The Supreme Court of Minnesota, in reviewing the case, said:

"It is not negligence per se for a passenger in a railway car, as it approaches a station to leave his seat and go to the door of the car in order to alight when it stops; neither is it such negligence, under all circumstances, for him to ride on the platform, or go upon it before the car stops for the purpose of getting off when it does stop, for there may be cases where from necessity, or by the express or implied invitation of those in charge of the train, a prudent man would do so; but in the absence of such facts it is such negligence. * * *

"There was neither necessity nor invitation, direct or implied by the defendant, to justify him in standing upon the steps of the car, which was approaching the station at a dangerous rate of speed."

Without referring to all the cases cited by the defendant, it is sufficient to say that upon careful examination of the facts of each case it is found that they are to be distinguished from the case at bar. They do hold, as said in Kentucky Central Railroad Co. v. Thomas' Adm'r, 79 Ky. 160, 42 Am. Rep. 208, that where the plaintiff himself has so far contributed to the misfortune by his own negligence or want of ordinary or common care and caution, and but for such negligence or want of ordinary care or caution on his part the misfortune would not have occurred, the plaintiff cannot recover, and the jury should be so instructed by the court. But they do not hold that this is a question that may be withdrawn from the jury and determined by the court as a question of law, where there is room for a difference of opinion on the part of reasonable men as to the inferences and conclusions which may be drawn from the admitted or proven facts. The case must be a very clear one that will justify the court in taking upon itself the responsibility of declaring as a matter of law that the plaintiff has been guilty of contributory negligence. As said by Chief Justice Cooley in Detroit & Milwaukee Railroad Co. v. Van Steinburg, 17 Mich. 99, 119:

"If the danger depends at all upon the action of any other person under a given set of circumstances, the prudence of the party injured must be estimated in view of what he had a right to expect from such other person, and he is not to be considered blamable if the injury has resulted from the action of another which he could not reasonably have anticipated. Thus the problem is complicated by the necessity of taking into account the two sets of circumstances affecting the conduct of different persons, and is only to be satisfactorily solved by the jury placing themselves in the position of the injured person, and examining those circumstances as they then presented themselves to him, and from that standpoint judging whether he was guilty of negligence or not. It is evident that such a problem cannot usually be one upon which the law can pronounce a definite sentence, and that it must be left to the sifting and determination of a jury."

In this view of the law we cannot say that the conduct of the deceased in the present case was so clearly reckless and negligent as to make the question of his alleged contributory negligence one of law. We think reasonable men may differ upon that question, and that it is, therefore, a question of fact for the jury under proper instructions.

The judgment is reversed.