### SPIESBERGER v. MICHIGAN CENT. R. CO.

(Circuit Court of Appeals, Seventh Circuit. July 13, 1916.)

#### No. 2264.

1. TRIAL ☞169—DIRECTED VERDICT—RIGHT TO.

In a passenger's personal injury action, verdict is properly directed for the carrier, where there is no evidence of its negligence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 341, 381–387, 389; Dec. Dig. ☞169.]

2. CARRIERS ☞414—CARRIAGE OF PASSENGERS—AGENTS—PORTERS.

Passengers in a parlor car belonging to another company are still passengers of the railroad company, and where the porter in charge of the car, though not a servant of the railroad company, was allowed to announce stations, the railroad company is liable for his acts; he being in that respect its agent.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1578, 1582, 1589; Dec. Dig. ☞414.]

3. CARRIERS ☞320(26)—CARRIAGE OF PASSENGERS—ACTIONS—JURY QUESTION.

Where a passenger, his station being announced and the vestibule doors being open, proceeds to the platform of the car and onto the steps as the train is brought practically to a stop, the carrier cannot as a matter of law be declared free from liability for injuries resulting to the passenger when he is thrown from the car steps by the sudden starting of the train with unnecessary violence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1244, 1322; Dec. Dig. ☞320(26).]

4. CARRIERS ☞347(10)—CARRIAGE OF PASSENGERS—ACTIONS—CONTRIBUTORY NEGLIGENCE.

Where a passenger, his station being announced and the vestibule being open, goes to the platform and on the train slackening speed to a practical stop goes upon the steps, he cannot as a matter of law be held guilty of contributory negligence, though he is thrown from the steps by the sudden starting of the train with unnecessary violence, particularly where the stop was at a station and darkness prevented the passenger from seeing that it was not the one announced.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1355, 1356, 1386, 1402; Dec. Dig. ☞347(10).]

5. CARRIERS ☞320(26), 347(10)—CARRIAGE OF PASSENGERS—ACTIONS—EVIDENCE—JURY QUESTION.

In an action for injuries received by a passenger who was thrown from the steps of a car when the train which had practically stopped was

started with a sudden jerk, the questions of the passenger's contributory negligence in going on the steps, and the carrier's negligence, *held* for the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1244, 1322, 1355, 1356, 1386, 1402; Dec. Dig. ☞320(26), 347(10); Negligence, Cent. Dig. § 301.]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by Levi Spiesberger against the Michigan Central Railroad Company. There was a judgment for defendant on directed verdict, and, new trial being denied, plaintiff brings error. Reversed and remanded.

August 13, 1911, plaintiff, aged 69, for many years a commercial traveler, took passage on defendant's train at Kennedy, Mich., with a party of 8 or 10 relatives and friends, including a son and wife, daughter and husband, and a granddaughter with her intended husband. The train comprised several vestibuled coaches, the rear one a Pullman parlor car, in which the entire party sought space, and all could be accommodated except plaintiff, who took a seat in the day coach, next forward. The destination of the entire party was Forty-Third street station, Chicago. The train was behind its schedule, and reached Sixty-Third street station about 10 p. m., where a stop was made. Passing Sixty-Third street, plaintiff left his car and crossed the vestibuled platform to the parlor car to see that his party would be getting ready. While talking with them there, the porter of the parlor car announced the Fifty-Third street station, and after having stopped there he announced Forty-Third street as the next stop, whereupon plaintiff, getting ready to leave the train walked out on the platform. Other passengers were coming out of both coaches onto the platform preparatory to leaving at Forty-Third street. Plaintiff and some others stepped over onto the platform of the day coach. The train was slowing down, and, according to the testimony of some of the witnesses, came to a stop, whereupon plaintiff and others back of him assuming that Forty-Third street station was reached, started to descend the steps. The vestibule doors were open and the trapdoors over the steps up, offering unobstructed egress from the cars. As plaintiff was descending, his hand grasping the handrail, the train started ahead with a sudden jerk, throwing him off and under the train, which, passing over him, cut off one of his legs, broke the other, and otherwise injured him. It was found that the place of injury was Forty-Seventh street, where there is a station quite similar to that at Forty-Third, but used only for suburban trains, and not a regular stopping place for through trains like this one, such as were the Sixty-Third, Fifty-Third, and Forty-Third street stations. Plaintiff had frequently traveled over this route and was generally familiar with it, knew the stations, and that it was customary to announce them; but the night was dark, and there was nothing to indicate to passengers what the stations were, other than the porter's announcement prior to reaching them, and there was no warning given to passengers that the place where the train seemed then about to stop was not the Forty-Third street station which had been announced.

There was some variance in the testimony as to whether or not the train came to a complete stop at Forty-Seventh street, or rather an uncertainty in the minds of some of the witnesses as to whether it actually stopped. Plaintiff said it did stop. Herod Cutter, who lived near the station and was then with his wife calling at a cottage just south of the station, abutting on the track, testified the train came to a stop and then pulled on, when he heard a peculiar cry and found plaintiff injured. On cross-examination he said he would not say under oath that the train actually came to a stop, but his impression was that it did, and this is what attracted his attention, as those trains do not ordinarily stop at that station. Harry F. Brown, who was just behind plaintiff, following him out, said he thought "the train was at a standstill." Again, he said: "It was almost to a standstill, going very

235 F.—55

slightly, comparatively it was stopped you might say. I could not say it was moving." Later he testified, "It came to a dead stop." Sinsheimer said, "It came practically to a standstill."

As to the manner in which the stations were called, plaintiff testified that the only announcement made was on leaving the stations, when the name of the next scheduled station was called out as the place where the train would next stop, and that after the train left Fifty-Third street the porter called out "Forty-Third street next stop." There is some controversy as to whether or not plaintiff's testimony can be construed to mean that, in addition to announcing what the next station would be, the stations were also announced when they were actually reached. The record leaves this in some doubt, depending upon the significance to be given to a nod of plaintiff's head in answer to some question. But witnesses Brown and Herbert Spiesberger testified that after leaving the stations the only announcement made by the porter was what the next station would be, i. e., after leaving Sixty-Third street he announced the next stop will be Fifty-Third street, and on leaving Fifty-Third street, he announced that the next stop will be Forty-Third street, and that there was no further announcement on reaching the station.

On the subject of the train starting with a jerk, plaintiff testified: "When I got to the second step it gave a sudden jerk, just a tremendous jerk, just twisted me around, and I fell off." Brown testified that plaintiff was walking down the steps and he (Brown) following, and the car started ahead and jerked plaintiff off and he went under the steps; that the effect of the starting was that all the passengers fell back in the direction from which they were coming. Lederer, who followed Brown, testified that, as plaintiff was stepping down, the train gave a jerk and threw Brown against the witness, and himself back against the vestibule to the east. Sinsheimer said, "The train slacked up and practically came to a standstill and then gave a lurch." Spiesberger, Jr., who was standing in the passage of the parlor car leading to the platform, said he felt a slackening of the movement of the train until he felt no more motion, and then all in the passageway sagged back and forth against each other in a sort of surging movement which jolted them around, and then the train went forward; that there was a stop and then a forward motion and all started ahead.

At the conclusion of the evidence for plaintiff, defendant's counsel moved the court to instruct the jury to find for defendant. Motion was granted, and the jury was so instructed, and rendered a verdict accordingly. Motion for new trial was overruled and judgment given on verdict. Upon the action of the court in directing the verdict, and declining to grant a new trial, error is assigned.

Elias Mayer, of Chicago, Ill., for plaintiff in error.

John D. Black, of Chicago, Ill., for defendant in error.

Before BAKER, MACK, and ALSCHULER, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). [1, 2] It is insisted for defendant that the record fails absolutely to show any negligence on the part of the company. If this is so, the court's direction of verdict was right. A plea was filed denying that the porter who called the stations was an employé of defendant, but there was no proof as to whether he was or not. However, he was in apparent charge of a car which was a part of the company's train, used to transport its passengers, and it does not appear that there was any one else in that part of the train to whom the company delegated its very useful and usual function of announcing the stations. Though passengers are in a parlor car which may belong to some other concern, they are none the less the passengers of the company, and the porter of the car, whether directly employed by the company or through some other instrumentality, is with respect to the pas-

sengers, and their safety, acting for the company. Penna. Co. v. Roy, 102 U. S. 451, 26 L. Ed. 141; Calhoun v. Pullman Co., 159 Fed. 387, 86 C. C. A. 387, 16 L. R. A. (N. S.) 575; L. & N. Ry. Co. v. Ray, 101 Tenn. 1, 46 S. W. 554; Campbell v. Seaboard Air Line Ry., 83 S. C. 448, 65 S. E. 628, 23 L. R. A. (N. S.) 1056, 137 Am. St. Rep. 824.

[3] In announcing, after leaving Fifty-Third Street, that Forty-Third street would be the next stop, the jury might have been justified in concluding that, when a stop was made a few moments thereafter, the company might reasonably have anticipated that passengers would infer it was the station announced; and, if the vestibule doors and the trapdoors were open, that passengers for the station announced would be likely to assume they were expected to alight, particularly if the place of stoppage was in fact a station, the night dark, and the train lighted so it might be difficult for the passenger, however generally familiar with the surroundings, to readily realize just where he was or that the place of stopping was not the station announced. And if in such situation passengers bound for the station announced are about to alight, and, by a sudden jerk of the train, are thrown off and injured, for the court to say as a matter of law that the evidence fails to show negligence on the part of the company is clearly an invasion of the jury's province. That under generally similar circumstances juries may properly find the carrier negligent as a basis for awarding damages to passengers sustaining injuries in consequence has been decided in numerous cases. Some of them are: Washington & Georgetown R. R. Co. v. Harmon, 147 U. S. 571, 13 Sup. Ct. 557, 37 L. Ed. 284; B. & O. S. W. R. R. Co. v. Mullen, 217 Ill. 203, 75 N. E. 474, 2 L. R. A. (N. S.) 115, 3 Ann. Cas. 1015; Ward v. C. & N. W. R. R. Co., 165 Ill. 462, 46 N. E. 365; C. & A. R. R. Co. v. Arnol, 144 Ill. 261, 33 N. E. 204, 19 L. R. A. 313; Bartle v. N. Y. C. & H. R. R. R. Co., 193 N. Y. 362, 85 N. E. 1091; Dallas v. I. C. R. R. Co., 144 Ky. 737, 139 S. W. 958; Wolf v. C. & N. W. R. R. Co., 131 Wis. 335, 111 N. W. 514; C. H. & I. R. R. Co. v. Revalee, 17 Ind. App. 657, 46 N. E. 352; C. H. & I. R. R. Co. v. Worthington, 30 Ind. App. 663, 65 N. E. 557, 66 N. E. 478, 96 Am. St. Rep. 355; P. & R. R. R. Co. v. Edelstein (Pa.) 16 Atl. 487; Phila., etc., R. R. Co. v. McCormick, 124 Pa. 427, 16 Atl. 848; Balto. & P. R. R. Co. v. Jean, 98 Md. 546, 57 Atl. 540.

[4] With like urgency it is insisted that the record conclusively shows plaintiff's own negligence contributed to his injury; and if this is so the judgment of the District Court must stand, for, notwithstanding any proof of negligence of the company, if the plaintiff's own negligence contributed to his injury he has no cause of action. One cannot well consider the question of the company's negligence without at the same time considering that of the plaintiff. What the company might reasonably expect of passengers in a given situation is of the essence of the question of the company's negligence; and whether or not passengers might reasonably be expected to do those things, or be in such situation, would have like bearing on the question of the negligence of the passenger.

When a station is announced, and its near approach reasonably expected, it cannot be said to be negligence per se for passengers to get ready to leave the train. Common experience shows that, if their preparation for departure did not begin until the station was actually reached and the train had stopped, they would most likely be carried beyond their destination. They must not unreasonably expose themselves to danger by going upon the platforms of rapidly moving trains; but where the train is apparently slowing down for the station announced, and is seemingly about to stop, it is not necessarily negligence in the passenger to go out upon the vestibuled platform or to begin descending the steps before the train has actually and fully stopped. Whether in going on the platform and steps the passenger manifests negligence for his own safety is ordinarily not a question of law for the court, but is for the jury. Thomas et al. v. San Pedro L. A. & S. Ry. Co., 170 Fed. 129, 95 C. C. A. 371 (9th C. C. A.); St. L., I. M. Ry. Co. v. Leftwich, 117 Fed. 127, 54 C. C. A. 1; Northern Pac. Ry. Co. v. Adams, 116 Fed. 324, 54 C. C. A. 196; Larson v. M. & St. L. R. R. Co., 85 Minn. 387, 88 N. W. 994.

In B. & O. R. R. Co. v. Meyers, 62 Fed. 367, 10 C. C. A. 485, this court was passing on a case where a passenger desiring to leave the train at a station was informed that no station stop was made there, but the brakeman told him the train stopped at a nearby railroad crossing, and he would notify the passenger so that he might leave at such crossing. When about a mile from the crossing and while the train was running rapidly, the brakeman opened the door and beckoned to the passenger, who thereupon went upon the platform, standing there and holding firmly to the railing, and, while so standing waiting for the train to stop, the unnecessarily sudden application of the air brakes caused such a jerking of the train as to throw off and injure the passenger. It was urged that by placing himself in this dangerous position the passenger so far contributed to the accident as to bar his recovery of damages. The court said:

"But whether or not, one is guilty of negligence in standing upon the platform of a car in motion is dependent upon the circumstances of the case, and is determined by the consideration whether a reasonably prudent man, under the circumstances existing, would have done so or not. The duty of the passenger is dictated and measured by the exigency of the occasion. Here the defendant in error had announced to him, by the act of the brakeman, that the train was about to come to a stop. * * * He had a right to presume that the train was abating its speed, with a view to stopping. We think it was a proper question to be submitted to the jury whether the defendant in error, under the circumstances, was guilty of an act which a reasonably prudent man in like situation would not have done."

Negligence cannot be predicated upon that which cannot reasonably be anticipated. If the plaintiff and the other passengers from both cars, who were coming out upon the platform in the evident belief that the stop for Forty-Third street was about to be made, acted in that respect as might reasonably be expected of ordinarily prudent passengers in like situation, there was no negligence in their so acting; and, if in this situation they could not reasonably have anticipated that the train would start with a sudden jerk of sufficient violence to be dangerous to their well being, they are not as a matter of law charge-

able with contributory negligence in failing to anticipate danger from such a cause.

[5] We are satisfied from the record that the issues of defendant's negligence and of plaintiff's contributory negligence were not determinable by the court as matters of law, but were for the jury.

The judgment of the District Court is reversed, and the cause remanded, with direction to grant a new trial.